## MATTER OF LAIGO

### In Deportation Proceedings

### A-20026816

*Decided by Board August 13, 1974*

A treaty investor is precluded from engaging in unauthorized employment by the provisions of both 8 CFR 214.1(c) and 8 CFR 214.2(e). A treaty investor engaged in the development of a cultural and trade center, is deportable under section 241(a)(9) of the Immigration and Nationality Act, as amended, as one who has failed to maintain status where he engaged in and received substantial commissions for the sale of cemetery plots.

CHARGE:

Order:. Act of 1952—Section 241(a)(9) [8 U.S.C. 1251(a)(9)]—Nonimmigrant changed to another nonimmigrant status—failed to comply with conditions of changed status.

ON BEHALF OF RESPONDENT:
Esther M. Kaufman, Esquire
1823 'L' Street, N.W.
Washington, D. C. 20036
Frederick A. Nervo, Esquire
995 Market Street, #1018
San Francisco, California 94103

ON BEHALF OF SERVICE:
Paul C. Vincent
Appellate Trial Attorney

The alien respondent has appealed from the September 15, 1973 decision of an immigration judge in which the respondent was found deportable and was accorded the privilege of voluntary departure. The appeal will be dismissed.

The respondent is a native and citizen of the Republic of the Philippines. She was admitted to the United States in August of 1970 as a nonimmigrant visitor. In March of 1971 her nonimmigrant status was changed to treaty investor. There is no issue in this case regarding the propriety of that change of status. The only questions presented here concern whether the respondent is deportable under section 241(a)(9) of the Immigration and Nationality Act as a nonimmigrant who has failed to comply with the conditions of her treaty investors status.

The Immigration and Naturalization Service alleged that the respondent violated the conditions of her status by accepting employ-

ment for pay as a cemetery plot salesperson. The respondent concedes both that she received substantial commissions for the sale, on a "pre-need" basis, of cemetery plots, and that this sales work was not within the scope of her activities as an investor. However, she challenges the finding of deportability on two grounds. First, she argues that a treaty investor is not totally precluded from engaging in employment which is outside the province of an investment, and second, she contends that the circumstances surrounding her sales work were such that her actions should not be deemed a violation of the conditions of her status.

The respondent is evidently a woman of considerable wealth. She was, and perhaps still is, active in the real estate business in the Philippines. Her principal endeavors in the United States relate to several corporations which she appears to control and which are engaged in the development of a Philippine cultural and trade center in San Francisco. She asserts that her involvement in the cemetery plot business arose out of a strike which affected burials in the San Francisco area.

The respondent's testimony was to the effect that several families of Philippine ancestry contacted her in an attempt to have deceased relatives interred during the course of the strike. The respondent searched and found a cemetery whose operations had not been suspended. She thereafter became aware of a lack of adequate planning for death within the Filipino community in the San Francisco area and began speaking at Filipino gatherings, stressing the desirability of purchasing cemetery plots on a "pre-need" basis. She evidently distributed contracts at the gatherings, and occasionally, if specifically requested, she would visit the home of a prospective purchaser in order to assist in the preparation of the contract.

The respondent maintains that she engaged in this activity as a service to her community. She claims that most of her working hours were devoted to the development of her investment, and that she spent at most two to three hours a week on cemetery plot sales work. The respondent earned commissions of approximately $14,000 for six months' sales work in 1971, approximately $21,000 for eight months' work in 1972, and approximately $900 for two and one half months' work in 1973.[1] Although she earned these large commissions from her sales work, the respondent maintains that she did not consider herself to be employed in this field. She testified that she was unaware that this activity could be considered a violation of the conditions of her status and that, not needing the additional income, she would not have con-

---

[1] The Service has not attempted to controvert the respondent's assertion as to the number of hours which she devoted to her sales work. If, at the meetings which she attended, she was in fact able to persuade substantial numbers of people to purchase the burial plots, then her testimony regarding her hours of work is believable.

ducted herself as she did if she had been informed of the possible consequences.

Section 101(a)(15)(E) is the provision of the Act governing the respondent's treaty investor status. That section describes a treaty investor as an alien who is in the United States "solely to develop and direct the operations of an enterprise in which he has invested, or of an enterprise in which he is actively in the process of investing, a substantial amount of capital." In *Matter of Udagawa*, 14 I. & N. Dec. 578 (BIA 1974), we were required to interpret this language of section 101(a)(15)(E)(ii). In so doing we determined that the section must be construed within the framework of the entire Act, and we placed considerable importance on the congressional policy, expressed in the Act, of protecting American labor from competition of an undesirable nature. Accordingly, we held that the alien in *Udagawa* could not qualify as a treaty investor, in part because his prospective job entailed some duties characteristic of positions occupied by skilled laborers. It is therefore clear that a treaty investor is statutorily limited in the type of economic activities in which he may engage.

The employment of nonimmigrants, including treaty investors, is also governed by regulations. The pertinent portion of 8 CFR 214.1(c) states:

> A nonimmigrant who is permitted to engage in employment may engage only in such employment as has been authorized. Any unauthorized employment by a nonimmigrant constitutes a failure to maintain status within the meaning of section 241(a)(9) of the Act.[2]

The regulation which is specifically applicable to treaty investors, 8 CFR 214.2(e), also addresses the question of employment. It reads, in part:

> A trader or investor may change from one employer to another only if his request for permission to do so has first been approved by the district director having jurisdiction over his residence. The request shall be supported by evidence that the requester would still be classifiable as a trader or investor in the new employment. . . . Any unauthorized change to a new employer shall constitute a failure to maintain status within the meaning of section 241(a)(9) of the Act.

This portion of 8 CFR 214.2(e) was not effective until several months after the respondent began her sales work.[3] However, it was in effect during the majority of the months in which she earned commissions, and it was operative in February of 1973 when the respondent recommenced her sales activities.

These regulations make it plain that a treaty investor may not engage

---

[2] The quoted portion of 8 CFR 214.1(c) was in effect prior to the respondent's commencement of her sales work on June 16, 1971. See 36 FR 8048 (April 29, 1971).

[3] See 36 FR 23865 (December 16, 1971).

in unauthorized employment. Moreover, we have consistently viewed unauthorized employment as a failure to comply with the conditions of an alien's status with respect to other nonimmigrant classifications, and this view has been endorsed by the courts. See *Mastorakis v. INS,* 460 F.2d 1283 (C.A. 9, 1972); *Gill v. District Director,* 426 F.2d 762 (C.A. 9, 1970); *Matter of Martinez and Londono,* 13 I. & N. Dec. 483 (BIA 1970), affirmed, *Londono v. INS,* 433 F.2d 635 (C.A. 2, 1970); *Matter of Boroumand,* 13 I. & N. Dec. 306 (BIA 1969); *Matter of Wong,* 11 I. & N. Dec. 704 (BIA 1966); *Matter of Vilanova-Gonzalez,* 11 I. & N. Dec. 610 (BIA 1966); *Matter of Garvey,* 10 I. & N. Dec. 519 (BIA 1964); *Matter of S—,* 8 I. & N. Dec. 574 (BIA 1960); *Matter of B—,* 6 I. & N. Dec. 234 (BIA 1954). The respondent was authorized to conduct affairs relating to her investment; she was not permitted to accept work as a cemetery plot salesperson.

The only remaining question is whether the respondent's conduct can be deemed employment for the purpose of this proceeding. In an unreported decision, *Matter of Ng Kow Wah,* A12 031 419 (BIA November 30, 1960), concerning the effect of employment on an alien in another nonimmigrant status, we stated that "[i]f the alien agreed to engage in gainful employment for pay, regardless of the number of days he worked, he has violated the terms of the nonimmigrant status under which he was admitted. . . ."

The work which the respondent performed was not of a casual nature. While she may not have known that her employment was in violation of her status, such lack of knowledge, without more, does not preclude a finding of deportability under section 241(a)(9). See *Gill v. District Director, supra.* Even if the respondent did not *initially* intend to be employed, the lengthy period of her involvement in this sales work coupled with the receipt of substantial commissions demonstrate the existence of an unauthorized employment relationship. A reasonable person would certainly have recognized that this was more than a simple civic project.

We find that the respondent engaged in unauthorized employment. She therefore failed to comply with the conditions of her treaty investor status. Deportability has been established by clear, convincing and unequivocal evidence.

While there appears to be some merit in counsel's contention that the immediate departure of the respondent from the United States would be undesirable for the Filipino community in San Francisco, this consideration is not germane to our adjudicatory functions. See *Matter of Geronimo,* 13 I. & N. Dec. 680 (BIA 1971).

ORDER: The appeal is dismissed.

*Further order:* Pursuant to the immigration judge's order, the respondent is permitted to depart from the United States voluntarily

within 88 days from the date of this order or any extension beyond that time as may be granted by the District Director; and in the event of failure so to depart, the respondent shall be deported as provided in the immigration judge's order.