## MATTER OF HARRIS

### In Deportation Proceedings

### A-18975482

*Decided by Board August 15, 1974 and October 30, 1974*

The respondent, a native and citizen of Austria entered the United States as a fiancee of a
United States citizen. They were married within 90 days of her entry and allegedly lived
together as husband and wife for approximately three months thereafter. Respondent's
application for adjustment of status to that of a permanent resident was filed on
December 21, 1970, and sworn to before an immigration officer on February 16, 1971.
However she and her husband were separated on February 24, 1971. Her application
for permanent resident was denied on July 27, 1971, they were divorced June 20, 1972.
The recording of the lawful admission for permanent residence of a fiancee under section
214(d) of the Immigration and Nationality Act, or in the alternative, adjustment of
status under section 245 of the Act was denied in this case because eligibility for such
recordation or adjustment depends upon the existence of a valid marriage which must
remain viable at the time the application is ruled upon.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(1)]—Nonimmigrant remained
longer.

ON BEHALF OF RESPONDENT:
Terry J. Flanagan, Esquire
Shaw & Howlett
225 S. Meramec Ave.
Suite 311
Clayton, Missouri 63105

ON BEHALF OF SERVICE:
Sam Bernsen, Esquire
General Counsel

### BEFORE THE BOARD
(August 15, 1974)

The respondent has appealed from the May 17, 1972 decision of the
immigration judge in which he found her deportable as charged, denied
her applications for permanent residence under sections 214(d) and 245
of the Immigration and Nationality Act, and granted her voluntary
departure. The appeal will be dismissed, and the order of the immigra-
tion judge affirmed.

The respondent, a native and citizen of Austria, entered the United
States on August 25, 1970 as a fiancée, intending to marry within 90
days of entry. She did marry her fiancé on November 21, 1970, and they

allegedly lived together as husband and wife for approximately three months thereafter. Her application for adjustment of status to that of a permanent resident was filed on December 21, 1970, and sworn to before an immigration officer on February 16, 1971. However, she and her husband were separated on February 24, 1971. Her application for permanent residence was denied on July 27, 1971.

Subsequently, the respondent and her husband were divorced on June 20, 1972, and while her appeal from the immigration judge's decision was pending here, she married another United States citizen, who filed a visa petition in her behalf. In light of this new fact, on July 31, 1973 we remanded the case to the immigration judge for further proceedings. However, before those proceedings could take place, the respondent's husband withdrew his visa petition on September 7, 1973, thus automatically revoking approval of the petition. 8 CFR 205.1(a)(1). The district director returned the case to us, and in an order dated November 5, 1973 we granted both the respondent and the Immigration and Naturalization Service time to comment on these developments, taking the case on certification to avoid any jurisdictional questions.

We now turn to a consideration of the merits of the case. The respondent denied all of the allegations in the order to show cause, but the immigration judge found that the Service had proved the truth of the allegations by clear, convincing, and unequivocal evidence. On appeal the respondent does not contest deportability but rather challenges the denial of relief under section 214(d) or section 245 of the Act.

The principal issue in this appeal concerns the purpose of Congress in enacting section 214(d) of the Immigration and Nationality Act, providing for a special visa petition on behalf of an alien fiancée or fiancé of a United States citizen, to be approved by the Attorney General, and also for a record of lawful admission for permanent residence, as follows: ". . . In the event the marriage between the said alien and the petitioner shall occur within three months after the entry and they are found otherwise admissible, the Attorney General shall record the lawful admission for permanent residence of the alien and minor children as of the date of the payment of the required visa fees."

The respondent did marry her fiancé within three months of her entry, and it is not suggested that she is not otherwise admissible. There are no allegations of fraud. The statute states that in such circumstances ". . . the Attorney General shall record the lawful admission for permanent residence of the alien. . . ." However, the immigration judge refused to grant adjustment of status under section 214(d) on the ground that eligibility for such adjustment depends upon the existence of a valid marriage which must remain viable at the time the application for permanent residence is being ruled upon." (Decision of May 17, 1972, p. 3).

153

The legislative history of section 214(d) shows that the intent of Congress was to facilitate marriages between Americans in the United States and their sweethearts abroad. H.R. Rept. No. 851, 91st Cong., 2d Sess. 2750, 2753, 2758 (1970). The new provision enabled fiancées and fiancés of United States citizens to avoid the long wait for immigrant status occasioned by the unavailability of nonpreference visa number for Eastern Hemisphere applicants and by the backlog for Western Hemisphere applicants. It also obviated the necessity for the United States citizens to go abroad to be married, which was the only alternative before this enactment. Congress demonstrated no intention to put spouses who had entered with a fiancé(e) visa in a better position than others seeking immigration benefits on the basis of their marital relationships.

For the marital relationship to support a section 245 application for adjustment of status, the relationship must exist in fact as well as in law. In *Matter of Lew*, 11 I. & N. Dec. 148 (D.D. 1965), the application for permanent resident status based on marriage was denied. There the applicant's husband had obtained an interlocutory divorce decree, not to be final for three more months. The applicant claimed that since the divorce was not final yet, the marriage was still in existence, and that therefore adjustment of status under section 245 should have been granted. The district director found that the marital *relationship* was nonexistent and that it could not, therefore, serve as the basis for the issuance of a preference visa to the applicant as a spouse. Id. at 149. An unreported case, *Matter of Molcilio*, A–17894515 (BIA March 13, 1972), was concerned with spouses who lived together only briefly after their marriage and then separated, the respondent-wife living in Hawaii while her United States citizen husband lived in California, each working and supporting himself. In considering the respondent-wife's application for adjustment of status pursuant to section 245, we found that the marriage was unstable from the outset, that the respondent's residence in the United States was short (two years), that no hardship to the spouse was shown, and that there were no outstanding equities. We dismissed the respondent's appeal from the immigration judge's denial of adjustment of status.

As demonstrated above, a nonviable marriage has been held not to support adjustment under section 245 of the Act. We find in the legislative history no intent on the part of Congress to have one standard for marriages on which section 245 adjustment is based, and another less stringent standard for marriages on which section 214(d) recordation is based.

Consequently, we hold that neither a nonviable marriage nor a terminated marriage will support section 214(d) recordation of lawful admission for permanent residence, and that, just as a marriage must exist in

fact as well as in law for it to support adjustment of status pursuant to section 245, so must it exist to support recordation of lawful admission for permanent residence pursuant to section 214(d).

We are aware that adjustment has been granted under section 214(d) despite the lack of a viable marriage. *Matter of Blair*, 14 I. & N. Dec. 153, (R.C. 1972) (applicant was widowed the day after her marriage but continued living with her deceased husband's parents); *Matter of Hays*, 14 I. & N. Dec. 188 (D.D., R.C. 1972) (applicant and petitioner separated with little hope of reconciliation). We are not bound by decisions of the Regional Commissioner, *Matter of Udagawa*, 14 I. & N. Dec. 578 (BIA 1974), and we disagree with his interpretation and application of section 214(d).

In addition, we agree with the immigration judge that adjustment of status may not be granted to the respondent under section 245 based on nonpreference status because the respondent does not have a valid labor certification. Moreover, because the respondent's second husband has withdrawn his visa petition in her behalf, the respondent is not eligible for adjustment of status under section 245 as the spouse of a United States citizen.

For the foregoing reasons, we shall affirm the order of the immigration judge.

ORDER: The appeal is dismissed and the order of the immigration judge is affirmed.

*Further order:* Pursuant to the immigration judge's order, the respondent is permitted to depart from the United States voluntarily within 61 days from the date of this decision, or within such additional time as may be granted by the district director. In the event of failure so to depart, the respondent shall be deported as provided in the immigration judge's order.

### BEFORE THE BOARD
(October 30, 1974)

On August 15, 1974, we dismissed the respondent's appeal from the immigration judge's order, denied recordation of the lawful admission for permanent residence of the respondent pursuant to section 214(d) of the Immigration and Nationality Act, and denied adjustment of status pursuant to section 245 of the Act. The Immigration and Naturalization Service has filed a motion for reconsideration of our denial of section 214(d) recordation. The motion will be denied.

After careful consideration of the contentions of the Service, we adhere to the interpretation of section 214(d) which we expressed in our decision of August 15, 1974.

ORDER: The Service motion is denied.

Theodore P. Jakaboski, Alternate Board Member, dissenting:

I respectfully dissent.

The clear position of the Immigration and Naturalization Service, set forth in its motion for reconsideration of the Board's order of August 15, 1974, indicating that the Board's interpretation is inconsistent with both legislative history and Service practice, should have been afforded greater weight. The Service motion for reconsideration should have been granted and this Board should have receded from its earlier decision in this case.

This Board, in its order of August 15, 1974, upheld the decision of an immigration judge denying recordation of the respondent's entry pursuant to section 214(d) of the Immigration and Nationality Act and denying adjustment of status under section 245 of the Act. The Board equated section 214(d) recordation of lawful entry with adjustment of status under section 245, and held that there must be a viable existing marriage at the time application for relief is made under section 214(d) the same as is required under section 245. This Board specifically rejected two decisions of regional commissioners of the Service which took a contrary position, namely *Matter of Blair*, 14 I. & N. Dec. 153 (R.C. 1972) and *Matter of Hayes*, 14 I. & N. Dec. 188 (R.C. 1972).

As the Service's General Counsel stated in the motion, section 214(d) of the Immigration and Nationality Act provides, in part, as follows:

"In the event the marriage between the said alien and the petitioner shall occur within three months after the entry and they are found otherwise admissible, the Attorney General *shall* record the lawful admission for permanent residence of the alien and minor children as of the date of payment of the required visa fee." (emphasis added)

The service took the position that this language is *mandatory* and that the Attorney General *must* record the lawful admission for permanent residence once the statutory conditions have been fulfilled. According to the General Counsel, the Service has always treated the adjudication of an application filed pursuant to section 214(d) as nothing more than a ministeral act which is required by the statute. He said all that is normally necessary for approval is the receipt of satisfactory evidence that a lawful marriage had been entered into between the alien and the U.S. citizen petitioner within three months after the alien's entry.

According to the General Counsel, this conclusion is supported by the legislative history of section 214(d) which shows that it was enacted to avoid long waits for visa issuance by finance(e)s of U.S. citizens and to obviate the need for the latter to proceed abroad to marry the former.

In its motion for reconsideration the Service also said:

"It is interesting to consider that had the U.S. citizen in the instant case proceeded abroad and married the respondent an 'immediate relative' immigrant visa would have been issued promptly upon approval of the I-130 petition and the respondent would have

been able to proceed to the United States immediately and would have been admitted for lawful permanent residence. The subsequent separation and dissolution of the marriage would have had no effect whatsoever on the respondent's status unless a determination was made pursuant to section 241(c) that the visa had been obtained fraudulently."

It was noted that the question of fraud is not involved here. Section 214(d) also provides that the fiancee of a U.S. citizen shall not be issued a visa until the Consular officer has received a petition filed by the U.S. citizen which petition must be approved by the Attorney General. The section provides such a petition shall he approved:

". . . only after satisfactory evidence is submitted by the petitioner to establish that the parties have a bona fide intention to marry and are legally able and actually willing to conclude a valid marriage in the United States within a period of 90 days after the alien's arrival."

It can thus be seen that no Consular officer will or can issue a fiancee visa until he has received the approval of the Attorney General. The Service, acting on behalf of the Attorney General, has the opportunity to determine and pass on the bona fides of the marital intent before a visa is even issued. Once the Service is satisfied as to the good faith of the parties, the visa is issued, and the marriage is subsequently performed within the time limit it is not only difficult, but also impossible, to conceive how section 214(d) can be interpreted as permitting the Attorney General to deny the alien's application for permanent residence, even though the original bona fide marriage has deteriorated to the point of dissolution.

The legislative history of section 245 and the method of processing section 245 applications is radically different from that involving section 214(d). Under the latter section the alien has already satisfied a Consular officer, at the time of visa issuance, and an Immigration officer, at the time of admission, that such alien is admissible as an immigrant. As opposed to this a section 245 applicant has had no previous adjudication of his admissibility for permanent residence and the entire processing of his application by the Service is therefore much more extensive and complex.

The Service urges that the position taken in *Matter of Blair* and *Matter of Hayes, supra,* is the correct interpretation of section 214(d). I agree. In those cases the Service took the position that once the alien had passed the initial investigation, received a visa, entered the United States and entered into the planned marriage the statute *required* the recording of the alien's lawful admission for permanent residence.

The Service is of the opinion that the specific discretionary power contained in section 245 permits the standard of a viable marriage to be applied in cases under that section. We must assume that Congress deliberately left that same power out of section 214(d). Therefore,

because of the distinct difference between the wording and intent of section 214(d) and section 245 the Service submits that it is not proper to judge a marriage under either statute by the same standard.

Accordingly, the order of August 15, 1974, should be withdrawn and an order entered that the respondent's application for section 214(d) relief be granted.

**Maurice A. Roberts, Chairman, dissenting:**

I concur in the foregoing dissenting opinion.