MATTER OF UDAGAWA

In Exclusion Proceedings

A–20300772

*Decided by Board February 13, 1974*

Applicant, who will supervise and train American workers as tempura cooks at a Japanese restaurant and will assist in the preparation of meals during the training period, is inadmissible as an employee of a treaty investor under section 101(a)(15)(E)(ii) of the Immigration and Nationality Act, since he will not be employed in a "responsible capacity" within the meaning of 22 CFR 41.41. [*Matter of Tamura*, 10 I. & N. Dec. 717 (Reg. Com. 1964), overruled.]

ON BEHALF OF APPLICANT:  William J. Lawler, Esquire
615 Montgomery Street
San Francisco, California 94111

EXCLUDABLE: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant not in possession of immigrant visa.

The alien applicant is a native and citizen of Japan who arrived at San Francisco, California on April 17, 1973, and sought admission as a nonimmigrant treaty investor. He was denied admission and an exclusion hearing was held on April 20, 1973, at which time the immigration judge found the applicant excludable under section 212(a)(20) of the Immigration and Nationality Act. The applicant has appealed that decision. The appeal will be dismissed.

Upon his arrival in the United States the applicant was in possession of a Japanese passport and a nonimmigrant treaty investor visa apparently issued by a United States consular official in Japan. At his hearing it was established that the applicant is a cook or chef specializing in the preparation of Japanese tempura meals. He is in the employ of a Japanese corporation which, through various corporate holdings, is the sole owner of a Japanese restaurant in San Francisco where the applicant had expected to work.

The applicant appears to have had at least one full year of schooling and two years' practical experience as a cook. During the last six months of his work experience in Japan he had specialized as a tempura chef and had supervised the activities of several other cooks. The applicant had been expected to remain in the United States for as long as two years, during which time he

was to supervise and train American workers as tempura cooks and was to assist in the preparation of meals at the restaurant. He was due to replace another tempura chef at the San Francisco restaurant, who evidently had had a similar assignment. An executive with the applicant's employer maintains that the applicant's presence here is necessary to insure the quality of the Japanese meals which are served at the restaurant until competent American help can be trained. This also appears to have been the function of the applicant's predecessor at the restaurant. The corporation's failure in its attempt to acquire adequate American help appears to have stemmed from an unwillingness on the part of successful trainees to remain at the job. Tempura cooking, it appears, requires greater effort than other cooking jobs with comparable pay.

The applicant seeks admission as a nonimmigrant treaty investor. Section 101(a)(15)(E)(ii) of the Act defines a treaty investor as:

> an alien entitled to enter the United States under and in pursuance of the provisions of a treaty of commerce and navigation between the United States and the foreign state of which he is a national, and the spouse and children of any such alien if accompanying or following to join him:
>
> (i) . . .
> (ii) solely to develop and direct the operations of an enterprise in which he has invested, or of an enterprise in which he is actively in the process of investing, a substantial amount of capital. . . .

The applicant has indicated that he has no funds or other property invested in any of the interrelated corporations involved in this matter. The corporation which employs him is the investor in this case, and for section 101(a)(15)(E)(ii) to have any real meaning in a world dominated by corporate entities, it must be construed in a manner which would permit appropriate agents of a corporation to obtain this nonimmigrant status. Consequently, it would be appropriate to admit this applicant as a nonimmigrant treaty investor, if he qualifies as an individual who intends "solely to develop and direct" the operations of the enterprise.

At present the regulations of the Immigration and Naturalization Service do not confront the question of who may qualify for treaty investor status. It appears, however, that a reasonable construction of section 101(a)(15)(E)(ii) is contained in 22 CFR 41.41. The relevant portion of this Department of State regulation states:

> (a) An alien shall be classifiable as a nonimmigrant treaty investor if he establishes to the satisfaction of the consular officer that he qualifies under the provisions of section 101(a)(15)(E)(ii) of the Act and that: (1) He intends to depart from the United States upon the termination of his status; and (2) he is an alien who has invested or is investing capital in a bona fide enterprise

579

and is not seeking to proceed to the United States in connection with the investment of a small amount of capital in a marginal enterprise solely for the purpose of earning a living; or that (3) he is employed by a treaty investor in a responsible capacity and the employer is a foreign person or organization of the same nationality as the applicant.

While this regulation could be subject to varying interpretations, we construe it to mean that an alien such as the applicant will qualify as a "treaty investor" if he has the necessary intent to depart and if he meets the conditions imposed by subdivision (3) of the quoted portion of the regulation. Since the evidence adduced at the hearing indicates that the applicant possesses the requisite intent to return to Japan, the remaining issue in this case is whether he can be considered to be "employed ... in a responsible capacity. ..."

The notes to 22 CFR 41.41, contained in the Department of State Foreign Affairs Manual, elaborate upon the regulation. The note which evidently relates to employment in a responsible capacity reads:

Highly trained technical and managerial personnel employed by firms having the nationality of a country which has entered into a treaty with the United States providing for the investor classification are entitled to treaty investor status if:

(a) they are employed in a managerial capacity, or

(b) they are highly trained and specially qualified technical personnel required in the United States for one of the following purposes:

(1) establishment of the enterprise,

(2) training or supervision of technicians employed in manufacturing, maintenance and repair functions, or

(3) the continuous development of product improvement and quality control.

Section 101(a)(15)(E)(ii) of the Immigration and Nationality Act, the State Department regulation (22 CFR 41.41), and the accompanying notes must all be construed within the framework, and in keeping with the concepts, of the Act.

In section 212(a)(14) of the Act Congress has evinced a desire to protect American labor from excessive job competition which might be generated by the presence in the United States of numerous skilled and unskilled alien laborers. Nevertheless, aliens who do *not* desire immigrant status, and who may be needed to

perform temporary services or labor in the United States, are potentially eligible for admission as nonimmigrants under section 101(a)(15)(H).[1] Similarly, section 101(a)(15)(L) provides a basis for the admission, as nonimmigrants, of intracompany transferees who are to render services involving specialized knowledge.[2]

Whether the applicant could qualify as a nonimmigrant under either of these provisions is not before us; however, the existence of this statutory scheme convinces us that Congress did not intend that skilled alien laborers or aliens occupying minor managerial posts should be eligible for treaty investor status. These job positions can be readily held by American workers without placing in jeopardy a United States investment made by a foreign firm. Although it would seem appropriate under certain circumstances for a foreign corporation temporarily to utilize the services of skilled alien workers, the jobs in which they would ordinarily be employed are not of such significance to the actual investor that treaty investor status should be accorded to these individuals. Skilled alien employees should be required to enter in a nonimmigrant status that will afford some measure of protection to American labor.[3]

The applicant is concededly an individual with a fair degree of specialized training who would be expected to function in a modest supervisory role. However, his proposed position at the restaurant also entails duties characteristic of skilled laborers, and the job is

---

[1] The regulation governing section 101(a)(15)(H) noninmigrants is 8 CFR 214.2(h). Pursuant to section 214(c) the regulation requires the approval of a visa petition for all aliens in this category. For an alien destined to perform temporary services or labor, it also requires labor certification or other evidence tending to insure that American workers would not be adversely affected by the alien's admission. The petitioner need not be a resident of the United States.

[2] The regulation applicable to section 101(a)(15)(L) also requires the alien applicant to be the beneficiary of an approved visa petition and permits the petitioner to be a nonresident. There is no labor certification requirement for this nonimmigrant category. However, the petitioner is required to submit a statement detailing the beneficiary's proposed function in the United States. 8 CFR 214.2(1).

[3] There is an additional factor to consider. Section 101(a)(15)(E) does not limit a treaty investor to a temporary stay, whereas, both section 101(a)(15)(H) and section 101(a)(15)(L) do contemplate only a temporary visit for a nonimmigrant in either category. The Immigration and Naturalization Service regulations governing these three nonimmigrant classifications speak in terms of a temporary admission. 8 CFR 214.2(e); 8 CFR 214.2(h)(7), (9) and (11); 8 CFR 214.2(1)(3). Nevertheless, the statute may be designed to allow a treaty investor an indefinite stay. *Compare* S. Rep. No. 1515, 81st Cong., 2d Sess. 563 (1950), *with* 1952 U.S. Code Cong. & Ad. News 1697. We have serious doubts concerning the admission of this applicant in a status which potentially could result in a limitless visit to the United States.

admittedly one which is ultimately expected to be held by an American worker. The position is not of such a substantial nature that it warrants the indefinite utilization of foreign labor.

The employment of aliens in this type of position cannot be characterized as designed solely for the development and direction of the investment. Rather, the continued use of foreign workers may function as a means of securing adequate help at less than the prevailing United States wage standards for jobs of comparable complexity. There is substantial evidence in the record to indicate that the applicant's employment in the United States was not required because of a shortage of qualified United State chefs, but because of the restaurant corporation's unwillingness adequately to compensate those available American workers.

Although it has not been clearly established that the applicant's employer desires to continue importing foreign labor, we are unable to hold that the applicant will be employed in a responsible capacity within the meaning of 22 CFR 41.41, or that he qualifies within the purview of the notes of the Foreign Affairs Manual. His abilities more resemble those of a skilled laborer than those of one who will develop and direct an enterprise. If he is to be admitted it must be via a category which would not utterly circumvent the congressional policy of protecting American labor from undesirable job competition.

In exclusion proceedings the applicant has the burden of proof to establish that he qualifies for admission under the claimed status. Section 291, Immigration and Nationality Act. We find that the applicant has not shown that he is employed in a responsible capacity, and therefore that he has not demonstrated his entitlement to admission as a nonimmigrant treaty investor. Since the applicant has failed to establish that he is entitled to nonimmigrant status, he is presumed, under section 214(b) of the Act, to be an immigrant. He is thus excludable under section 212(a)(20) as an immigrant not in possession of an immigrant visa or other appropriate documentation.

Finally, the approach we have adopted in this case is consistent with the result in *Matter of Kobayashi and Doi*, 10 I. & N. Dec. 425 (Deputy Assoc. Commr. 1963). We recognize that our decision is in apparent conflict with *Matter of Tamura*, 10 I. & N. Dec. 717 (Reg. Com. 1964); however, we are not bound by Regional Commissioners' rulings.

ORDER: The appeal is dismissed.