# In re Lumen Berina TIJAM, Respondent

## File 41 236 021 - Los Angeles

*Decided December 10, 1998*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) In making the discretionary determination on a waiver of deportability pursuant to section 241(a)(1)(H) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(H) (1994), an Immigration Judge should consider the alien's initial fraud or misrepresentation in the overall assessment of positive and negative factors.

(2) The Board of Immigration Appeals declines to follow the policy set forth by the Commissioner of the Immigration and Naturalization Service in *Matter of Alonzo*, 17 I&N Dec. 292 (Comm'r 1979), that the underlying fraud or misrepresentation for which the alien seeks a waiver should be disregarded.

Charles M. Miller, Esquire, Studio City, California, for respondent

A. Ashley Gambourian, Assistant District Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; VACCA, HEIL-MAN, HOLMES, HURWITZ, FILPPU, COLE, MATHON, GUENDELSBERG-ER, JONES, GRANT, and SCIALABBA, Board Members, Concurring and Dissenting Opinions: VILLAGELIU, Board Member; ROSENBERG, Board Member.

GUENDELSBERGER, Board Member:

In a decision dated August 18, 1995, an Immigration Judge found the respondent deportable, denied her a waiver of deportability under section 241(a)(1)(H) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(H) (1994),[1] found her statutorily ineligible for suspension of

---

[1]Since amendments made by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 309-546 ("IIRI-RA"), are not currently applicable to the case before us, except where otherwise noted, references herein are made to the Immigration and Nationality Act as it existed prior to IIRIRA's enactment, Section 241(a)(1)(H) has been renumbered as section 237(a)(1)(H) of the Act, 8 U.S.C. § 1227(a)(1)(H) (Supp. II 1996), by the IIRIRA.

deportation under section 244(a)(1) of the Act, 8 U.S.C. § 1254(a)(1) (1994), and denied her the privilege of voluntary departure in lieu of deportation to the Philippines under section 244(e) of the Act. The respondent has appealed from that decision. The respondent's request for oral argument is denied, 8 C.F.R. § 3.1(e) (1998). The record will be remanded to the Immigration Judge for further proceedings.

## I. ISSUES ON APPEAL

The respondent conceded deportability on all the charges against her, including a charge of fraud. She claims, however, that the fraud was based on an innocent misrepresentation. On appeal the respondent has challenged the Immigration Judge's findings that she did not merit a section 241(a)(1)(H) waiver in the exercise of discretion and that she was statutorily ineligible for suspension of deportation and voluntary departure. In addition, she has filed a motion to reopen the proceedings and remand the record to the Immigration Judge to allow her to apply for adjustment of status pursuant to section 245 of the Act, 8 U.S.C. § 1255 (Supp. II 1996).

Addressing the respondent's request for a waiver under section 241(a)(1)(H) of the Act, we find it appropriate to remand the record to the Immigration Judge for further proceedings. Based on the recent decision from the United States Supreme Court in *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 117 S. Ct. 350 (1996), we find it appropriate to revisit the issue of the relevant factors to consider in exercising discretion in section 241(a)(1)(H) cases. Specifically, for the reasons set forth below, we decline to limit the factors we may consider in the exercise of discretion, and therefore, we decline to follow the holding in *Matter of Alonzo*, 17 I&N Dec. 292 (Comm'r 1979). In regard to the other forms of relief requested by the respondent, we find that upon remand to the Immigration Judge the respondent may pursue any relief available to her.

## II. WAIVER OF DEPORTABILITY PURSUANT TO SECTION 241(a)(1)(H)

### A. Factual Background

The record reveals that the respondent, a 43-year-old native and citizen of the Philippines, entered the United States as a lawful permanent resident on March 14, 1987, with an immigrant visa issued to her as the unmarried daughter of a United States citizen (her now deceased father). On December 23, 1989, the respondent visited the Philippines and was married in a religious ceremony.

On March 17, 1992, the respondent filed an Application to File Petition for Naturalization (Form N-400). On the application, the respondent listed her 1989 marriage as her only marriage, She also listed four children on the application, two born in the United States subsequent to her entry as a lawful permanent resident, and two born in the Philippines prior to her immigration. The respondent had failed to disclose the two children born in the Philippines on her earlier application for an immigrant visa.

At an interview conducted on September 15, 1993, as part of the respondent's application for naturalization, the respondent, under oath, informed the immigration examiner that she did not include her two eldest children on her visa application because they were born out of wedlock and she did not want the Immigration and Naturalization Service to investigate her. She also told the immigration examiner that she had only one marriage which occurred in 1989. The immigration examiner confronted the respondent with a marriage contract dated January 9, 1982, which indicated that the respondent and her husband were married in a civil ceremony on that date. The immigration examiner also stated that the Service found birth certificates for the respondent's eldest children, which indicated that they were legitimate. The respondent had submitted birth certificates for these children, which stated that they were illegitimate. According to the transcript of the naturalization interview contained in the record, the respondent failed to provide the immigration examiner with an explanation why she concealed her first marriage. On September 17, 1993, the respondent withdrew her naturalization application.[2]

On November 3, 1994, the respondent was served with an Order to Show Cause and Notice of Hearing (Form I-221), charging her with deportability. At her deportation hearing held on August 16 and 18, 1995, the respondent, her nursing supervisor, and an expert witness in the area of clinical social work testified on the respondent's behalf. Regarding the 1982 marriage contract, the respondent testified that she did, in fact, have a civil marriage ceremony on January 9, 1982. She reiterated, however, that she did not think that the first civil marriage of 1982 was valid because she and her husband asked the person who performed the civil ceremony not to record the marriage. She stated that she and her husband decided to get a marriage contract without actually getting married so that her Saudi Arabian employers would not fire her when they found out that she was pregnant. She again stated that she did not include her two eldest children on her immigrant visa application because she believed that they were ille-

_____

[2]The respondent reapplied for citizenship on October 27, 1993, and was interviewed in conjunction with that application on May 25, 1994. On November 3, 1994, deportation proceedings were initiated against the respondent. On July 10, 1995, the respondent had a final hearing regarding her naturalization application before a United States district court judge. The judge dismissed the application without prejudice due to the pending deportation case.

gitimate. She also denied any knowledge of the second set of birth certificates showing that the two eldest children were legitimate, which were submitted by the Service. She indicated that it was not her signature on those birth certificates.

Both the expert witness and the respondent testified that the respondent's United States citizen son, who is 10 years old, suffers from a learning disability. They both stated that it would be in the best interest of the child to remain in the United States, where special programs are available to him to deal with his disability. The respondent also stated that she did not think that her son could receive special assistance for his disability in the Philippines. She also testified that she was concerned about her children's health in the Philippines, especially since they would no longer have access to her health care coverage, and because her son has adverse reactions to mosquito bites.

Both the respondent and the expert witness testified to the fact that the respondent's United States citizen mother suffers from a blood disorder called polycythemia. The respondent testified that, as a registered nurse, she is in a position to monitor her mother's blood and take her to the doctor. She stated that although she and her mother live with her other siblings, she cares for her mother because of her medical background.

The respondent's nursing supervisor testified that the respondent had been a clinical nurse at Holy Cross Medical Center since 1987. She stated that the respondent was in charge of a post-intensive care unit for trauma and cardiopulmonary patients and, at times, supervised other nurses in her unit. The supervisor testified that the respondent did "excellent work," was "trustworthy," and was an "industrious person."

The record reveals that the respondent has been employed as a registered nurse at Holy Cross Medical Center since May 4, 1987, and at the All Saints Health Care Center since May 19, 1993. She makes a good salary and is able to contribute financially to her mother's care and to the rent of the condominium that she shares with her siblings and her mother. She also sends money to her husband and children in the Philippines. She has consistently paid her income taxes and has no criminal violations. The respondent also volunteers at her local church. According to the record before us, to date, the respondent has not filed a visa petition for her husband or her two children in the Philippines.

The respondent claims on appeal that the immigration examiner coerced her into withdrawing her naturalization application by threatening to deport her. She contends that he would not allow her to provide an explanation for the existence of the 1982 marriage contract. The respondent asserts that she and her husband never intended to record the civil marriage. In fact, she claims that they paid the preparer of the marriage contract extra money to prepare the contract, but to not file it. She states that they had the contract prepared because she was pregnant, and she feared that her Saudi

Arabian employer would fire her if she had a child out of wedlock. The respondent also states that she believed that the marriage contract was not valid because "it was predated, had an invalid license, lacked witnesses and a witness signature." She contends that she first learned that the 1982 marriage contract was recorded when the immigration examiner showed her the document at her continued naturalization interview.

## B. The Exercise of Discretion

In order to demonstrate eligibility for relief under section 241(a)(1)(H) of the Act, the respondent must establish that she is statutorily eligible and that she merits relief in the exercise of discretion.[3] The Immigration Judge found, and we agree, that the respondent is statutorily eligible for a waiver. Thus, the only issue is whether the Immigration Judge properly denied the respondent's request for relief in the exercise of discretion.

The question whether to exercise discretion favorably necessitates a balancing of an alien's undesirability as a permanent resident with the social and humane considerations present to determine whether a grant of relief is in the best interests of this country. Adverse factors may include the nature and underlying circumstances of the fraud or misrepresentation involved; the nature, seriousness, and recency of any criminal record; and any other additional evidence of the alien's bad character or undesirability as a lawful permanent resident of the United States. Favorable considerations may include family ties in the United States; residence of a long duration in this country, particularly where it commenced when the alien was young; evidence of hardship to the alien or her family if deportation occurs;

---

[3]Section 241(a)(1)(H) provides:

The provisions of this paragraph relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens described in section 212(a)(6)(C)(i), whether willful or innocent, may, in the discretion of the Attorney General, be waived for any alien (other than an alien described in paragraph (4)(D)) who—

(i) is the spouse, parent, son, or daughter of a citizen of the United States or of an alien lawfully admitted to the United States for permanent residence; and

(ii) was in possession of an immigrant visa or equivalent document and was otherwise admissible to the United States at the time of such entry except for those grounds of inadmissibility specified under paragraphs (5)(A) and (7)(A) of section 212(a) which were a direct result of that fraud or misrepresentation.

A waiver of deportation for fraud or misrepresentation granted under this subparagraph shall also operate to waive deportation based on the grounds of inadmissibility at entry directly resulting from such fraud or misrepresentation.

a stable employment history; the existence of property or business ties; evidence of value and service to the community; and other evidence of the alien's good character. *See Hernandez-Robledo v. INS,* 777 F.2d 536 (9th Cir. 1985); *see also Matter of Mendez-Moralez*, 21 I&N Dec. 296 (BIA 1996).

The record before us presents a complicated set of facts in which the respondent has presented significant equities, but in which there also exist serious adverse factors. In the respondent's favor, we find that she has substantial family ties in the United States. She has been in the United States for more than 10 years and has been steadily employed since her entry. Because of her steady employment history, the respondent is able to provide financially for her husband and her two children in the Philippines. The respondent's mother is also in need of financial and medical support and care, to which the respondent contributes. One of the respondent's United States citizen children has a learning disability and may have difficulty adjusting to life in the Philippines. Moreover, both of the respondent's United States citizen children have spent the formative years of their lives in the United States. Thus, the respondent's deportation may have a significant impact upon her United States citizen children.

There are, however, serious adverse factors in the record. The respondent concealed in her immigrant visa application that she was married and entered the United States as the unmarried daughter of a United States citizen, despite having been married in a civil ceremony on January 9, 1982. She also failed to disclose that she had two children in the Philippines when she filed her application for an immigrant visa.

Of particular significance to us are the discrepant documents in the record. The respondent, under oath, both at her naturalization interview and at her deportation hearing, contended that her 1982 civil marriage was invalid, although there is what appears to be a valid marriage contract in the record. The respondent continued to make this assertion on appeal without presenting any evidence to support her assertion. In addition, the Service alleges that the birth certificates submitted by the respondent for her two children in the Philippines are fraudulent, as they state the children are illegitimate, whereas the Service found birth certificates for the children showing them as legitimate. It is unclear from the record, however, whether the respondent's birth certificates are, in fact, fraudulent.

The Immigration Judge explicitly found that the respondent "lied to the Immigration Officer during her naturalization interview." Making false statements under oath during the naturalization process is an extremely serious adverse factor. United States citizenship is a uniquely significant status, and the integrity of the naturalization process is a matter of profound importance, both to present United States citizens and to aliens who hope to become citizens of this country, as well as to the Government.

A finding of false testimony under oath, given during the course of a hearing in which relief from deportation under section 241(a)(1)(H) is sought, is also considered an extremely serious adverse factor. Although the Immigration Judge remarked in his decision that he detected a "basic deceptiveness before me in court" and a "pattern of deception" in the respondent's "conduct during her hearings and during her testimony," he did not make an explicit finding that the respondent gave false testimony during her deportation hearing. In particular, it remains unclear from the record before us whether the Immigration Judge accepted or rejected the respondent's explanations regarding the 1982 marriage contract and the double set of birth certificates for the eldest two children, which contain discrepant information as to whether they were born in or out of wedlock.

We remain uncertain, after examining the record before us, whether the Immigration Judge made a finding that the respondent testified falsely during the course of the deportation hearing, and, if so, whether appropriate weight was afforded such a finding. Because of the importance of a clear ruling on the issue of "false testimony" during the course of the deportation proceeding as to the birth certificates and the 1982 marriage, we find it appropriate to remand the record to the Immigration Judge for a determination of the authenticity of the birth certificate submitted by the respondent for her two eldest children and a finding as to credibility of the respondent's explanations regarding these documents. Upon remand, the parties may present any additional evidence as is appropriate.

## C. *INS v. Yueh-Shaio Yang*

Subsequent to the Immigration Judge's decision in this case, the United States Supreme Court issued a decision in *INS v. Yueh-Shaio Yang, supra*. In *Yang*, the Supreme Court addressed the issue of the exercise of discretion in section 241(a)(1)(H) waivers, specifically, which factors could be considered in making such a determination. On January 16, 1997, we requested the parties to submit supplemental briefs in the instant case, addressing the question of the exercise of discretion regarding the respondent's section 241(a)(1)(H) application in light of the recent Supreme Court decision in *Yang*. In regard to this general question, we asked that the parties also address what impact, if any, the *Yang* decision had on the Service's policy, as set forth in *Matter of Alonzo, supra*, of disregarding the underlying fraud or misrepresentation for which the respondent is deportable, i.e., the initial fraud, in making the waiver determination. Both parties responded to our request by filing supplemental briefs.

Based on the Supreme Court's decision in *Yang*, we find it appropriate to revisit the issue of the relevant factors to be considered in exercising discretion in section 241(a)(1)(H) cases. Specifically, we will address the issue of considering the underlying, or initial, fraud or misrepresentation for which

the respondent is deportable in making the waiver determination. *See Matter of Alonzo, supra.* Such a discussion is appropriate to provide guidance to the Immigration Judge in the instant case on remand, and to other Immigration Judges and the Service in subsequent section 241(a)(1)(H) cases, in making a discretionary determination. Upon remand, the Immigration Judge should consider the following discussion in entering a new decision.

### D. *Matter of Alonzo*: Considering the Initial Fraud

In determining whether to favorably exercise discretion on a waiver request, the Service's stated policy has been to disregard the underlying fraud or misrepresentation for which the respondent is seeking the waiver—the initial fraud. *See Matter of Alonzo, supra.*

The United States Court of Appeals for the Ninth Circuit, within whose jurisdiction this matter arises, had ruled in a number of decisions that misrepresentations "arising from" the initial fraud should not constitute an adverse factor against the respondent in making a section 241(a)(1)(H) discretionary determination. *See Delmundo v. INS*, 43 F.3d 436 (9th Cir. 1994); *see also Braun v. INS*, 992 F.2d 1016 (9th Cir. 1993); *Hernandez-Robledo v. INS, supra.*

In *INS v. Yueh-Shaio Yang, supra*, however, the United States Supreme Court held that the language of section 241(a)(1)(H) of the Act "imposes no limitations on the factors that the Attorney General (or her delegate . . . ) may consider in determining who, among the class of eligible aliens, should be granted relief." 117 S. Ct. at 352. The Court stated that it is "rational, and therefore lawful, . . . to distinguish aliens . . . who engage in a pattern of immigration fraud from aliens who commit a single, isolated act of misrepresentation." *Id.* at 354. The Court also noted that while it is not required by the Act that the entry fraud or misrepresentation be disregarded in making the waiver determination, it may be an "abuse of discretion" to make an irrational departure from the past policy of disregarding the initial fraud, *Id.* at 353.

Based on the Supreme Court's decision in *Yang*, we find it appropriate to revisit the issue raised in *Matter of Alonzo*, *supra.* Although erroneously attributed to this Board on various occasions, *Matter of Alonzo* is a decision by the Commissioner of the Immigration and Naturalization Service, in which the Commissioner held that in making the discretionary determination under section 212(i) of the Act, 8 U.S.C. § 1182(i) (1976), (which is analogous to section 241(a)(1)(H)), the action for which the alien seeks to be forgiven should not be held as an adverse factor.[4] This policy decision

---

[4] Section 212(i) of the Act is analogous to section 241(a)(1)(H) in that it provides a discretionary waiver for an alien who has sought to procure, or has procured, a visa or other documentation, or entry into the United States by fraud or misrepresentation. It differs from section 241(a)(1)(H) in several ways. It applies to aliens who are *excludable* because of fraud or

415

has been extended to section 241(a)(1)(H) cases by the Service.

We are not, however, bound by decisions of the Commissioner. *See Matter of Fueyo*, 20 I&N Dec. 84, 87 n.3 (BIA 1989); *see also Matter of Udagawa*, 14 I&N Dec. 578, 582 (BIA 1974). *Compare* 8 C.F.R. § 3.1(g) (1998) (stating that decisions of the Board are specifically made binding on the Service) *with* 8 C.F.R. § 103.3(c) (1998) (stating that Service decisions are made binding only on Service employees). Moreover, the Service now contends that as a matter of policy it has decided to withdraw from *Matter of Alonzo*. In its supplemental brief on appeal, the Service states that it "will hereinafter consider an alien's entry fraud as an adverse factor in determining whether an alien merits a favorable exercise of discretion under section 241(a)(1)(H) of the Act. Additionally, the circumstances surrounding the fraud may be considered in the balancing equation."

In her supplemental brief on appeal, the respondent argues that because the policy outlined in *Matter of Alonzo* was in effect when the respondent filed her application for a waiver under section 241(a)(1)(H) of the Act, a departure from the *Alonzo* holding would be "irrational and an abuse of discretion." The respondent cites to the United States Supreme Court's language in *INS v. Yueh-Shaio Yang, supra*, to support her contention.[5]

We decline to limit the factors we may consider in the exercise of discretion. As noted by the Supreme Court in *Yang*, "[S]atisfaction of the requirements under § 241(a)(1)(H), including the requirement that the alien have been 'otherwise admissible,' establishes only the alien's *eligibility* for the waiver. Such eligibility in no way limits the considerations that may guide the Attorney General [or her delegate] in exercising her discretion to determine who, among those eligible, will be accorded grace." *INS v. Yueh-Shaio Yang*, 117 S. Ct. at 353. We recognize that Congress' intent in enact-

---

misrepresentation, As amended by section 349 of the IIRIRA, 110 Stat. at 3009-639, section 212(i) provides that a waiver is not available to aliens who might previously have qualified on the strength of their relationship to their United States citizen or lawful permanent resident children, and it now requires a showing of "extreme hardship" to the qualifying citizen or lawful resident relative.

In *Alonzo* the Commissioner relied on the fact that the version of section 212(i) then in effect did not include an extreme hardship requirement, thus distinguishing it from section 212(h), *See Matter of Alonzo, supra*, at 294, Notably, section 349 of the IIRIRA added an extreme hardship requirement to section 212(i), so this distinction no longer exists.

[5]In *Yang* the United States Supreme Court stated:

Though the agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as "arbitrary, capricious,[or] an abuse of discretion" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

*INS v. Yueh-Shaio Yang*, 117 S. Ct. at 353.

ing section 241(a)(1)(H) was to foster, in appropriate cases, the unity of families composed, in part, of United States citizens or lawful permanent residents. *See Hernandez-Robledo v. INS, supra*. In adding a discretionary component to section 241(a)(1)(H), however, Congress was acting in keeping with the underlying purpose of predecessor provisions that granted "relief to limited classes of aliens whose fraud was of such a nature that it was more than counterbalanced by after-acquired family ties." *Reid v. INS*, 420 U.S. 619, 630 (1975) (addressing former section 241(f) of the Act). In making a discretionary finding, we believe that we must look at each of the adverse factors, including the alien's initial fraud, to determine whether, in light of all of the factors presented, a waiver of deportability should be granted to maintain the alien's family unity and strong ties to the United States. Section 241(a)(1)(H) was intended to afford relief to those aliens whose "after-acquired family ties" outweighed their fraud, both the initial fraud and other fraud "arising from" the initial fraud. Therefore, we decline to follow the holding in *Matter of Alonzo*, *supra*, and we will not limit the factors that we may consider in the exercise of discretion.

The respondent argues on appeal that if we fail to follow the policy outlined in *Matter of Alonzo*, it would be an abuse of discretion because the *Alonzo* ruling was in effect when she filed her application for a waiver under section 241(a)(1)(H) of the Act. Our "departure" from the *Alonzo* ruling is neither irrational nor an abuse of discretion. We have articulated a rational basis for deciding to "withdraw" from the *Alonzo* ruling, which, in fact, was never a ruling that this Board adopted as a precedent. *See* 8 C.F.R. § 3.1(g). Moreover, we provided both parties with adequate notice and the opportunity to address the possibilities that we would decline to follow the ruling in *Matter of Alonzo* and that the respondent's initial fraud, of concealing her first marriage, may be considered in the exercise of discretion. We also note that upon remand, the respondent has the opportunity to address the circumstances surrounding her initial fraud and to counterbalance the adverse factors in the record, including the initial fraud, with factors in her favor.

### III. CONCLUSION

Upon remand, the parties will be provided an opportunity to augment the record, and the Immigration Judge will enter a new decision, considering the equities in the respondent's favor as well as all of the adverse factors, including the respondent's initial fraud, in making a discretionary determination. We note that subsequent to filing the instant appeal, the respondent submitted a motion to reopen the proceedings and remand the record to the Immigration Judge to allow her to apply for adjustment of status pursuant to section 245 of the Act, based upon an approved employ-

ment-based visa petition. Because we have decided to remand the record to the Immigration Judge for further proceedings, the respondent may pursue at the new hearing her application for adjustment of status or a request for any other relief for which she is eligible.

**ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion.

*CONCURRING AND DISSENTING OPINION:* Gustavo D. Villageliu, Board Member

I respectfully concur in part and dissent in part.

While I agree with most of the majority's reasoning, I also agree with the concurring and dissenting opinion of Board Member Rosenberg that the focus of the discretionary determination should emphasize family ties and take into account the fact that the waiver is meant to excuse fraud or willful misrepresentation at entry.

We should not indiscriminately apply the test prescribed in *Matter of Marin*, 16 I&N Dec. 591 (BIA 1978), for post-entry misbehavior by resident aliens to a situation where the adverse factor being considered is a misrepresentation at entry. The requirement in section 241(a)(1)(H) of the Act, 8 U.S.C. § 1251(a)(1)(H) (1994), that an alien in deportation proceedings seeking such a waiver be the spouse, son, or daughter of a United States citizen or lawful permanent resident otherwise admissible at entry, except for the misrepresentation, necessarily implies that such equities should ordinarily be sufficient for the favorable exercise of discretion. The purpose of this waiver is to forestall deportation for being excludable at entry where it would break up a family composed in part of United States citizens or lawful permanent residents. *See INS v. Errico*, 385 U.S. 214 (1966); *Matter of Da Lomba*, 16 I&N Dec. 616 (BIA 1978). Consequently, I agree with Board Member Rosenberg that to deny the waiver to an eligible alien solely because of the initial fraud might constitute an abuse of discretion contrary to the express terms of the statute.

*CONCURRING AND DISSENTING OPINION:* Lory Diana Rosenberg, Board Member

I respectfully concur in part and dissent in part.

The issues before us do not involve merely the effect of the Supreme Court's ruling in *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 117 S. Ct. 350 (1996), or, whether the Immigration Judge's exercise of discretion over the respondent's waiver application under section 241(a)(1)(H) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(H) (1994), and denial of suspension of deportation and voluntary departure was proper. The principal issue, on which the exercise of discretion depends at least in part,

is whether the respondent engaged in fraud or willful misrepresentation in her contacts with United States Government officials, or whether any misrepresentations she may have made were innocent.

This raises two fundamental questions: First, what constitutes fraud or willful misrepresentation, or false testimony, in the context of deportability and excludability? And, second, if a misrepresentation did occur, what weight should it be given as an adverse factor and how does it effect our cumulative evaluation of the many factors that must be considered in adjudicating the respondent's request for a discretionary waiver under section 241(a)(1)(H) of the Act?

While I agree with the majority that the decision of the Immigration Judge is wanting and impedes a proper review of his denial of the respondent's request for a waiver under section 241(a)(1)(H) of the Act. I also find his conclusion that the respondent engaged in fraud or willful misrepresentation under section 212(a)(6)(C)(i) of the Act, 8 U.S.C. § 1182(a)(6)(C)(i) (1994), as well as that she "lied" in the course of a naturalization interview, to be erroneous and not supported by reasonable, substantial, or probative evidence. I also agree that the respondent, who appears to have been legally married when she received an immigrant visa as an "unmarried daughter," may need to obtain a waiver to overcome the fact that she was excludable at the time of her entry because she lacked valid entry documents. At the same time, I disagree that the "serious adverse factors" the majority seems to presume exist in the record actually are present, and I disagree with the majority's declaration of the standard applicable to a waiver under section 241(a)(1)(H) of the Act. As we are remanding the record for further consideration, I write separately to address the lack of evidence of fraud or willful misrepresentation in the record, and its effect on the consideration of the respondent's request for a waiver that is subject to the discretion of the Attorney General.

## I. DEPORTABILITY ON GROUNDS OF BEING EXCLUDABLE AT ENTRY FOR FRAUD OR WILLFUL MISREPRESENTATION OF A MATERIAL FACT

The evidence reflects that in November 1986, the respondent filed an application for an immigrant visa indicating that she was not married and omitting any mention that she had two children (whom she believed to be illegitimate because she did not consider herself to have been married when they were born). She immigrated to the United States in March 1987 and married her husband in a full civil and religious ceremony in 1989. Subsequently, in 1992, the respondent filed an application for naturalization, indicating that she was married, and revealing that she had two children born in the Philippines and two children born in the United States.

At a naturalization interview, the respondent was confronted with a "marriage contract" dated January 8, 1982, which she attempted to explain by noting that it lacked a necessary witness signature, and that the one witness signature that appeared on the document was made on a date different from the date on which the "contracting parties" signed the document. She also attempted to explain that there were no witnesses actually present when the document was executed, that it was executed in a place other than the place the license was issued, that the contract was signed without waiting a requisite 10-day period, and that she and her husband had paid the arranger of the contract not to record the document. Although she admitted that she had not affirmatively disclosed the fact of this contract at the time of her immigrant visa interview, she was not given an opportunity to explain her reasons for not doing so,

The respondent reported that she was told she had to withdraw the application or be deported. When she complied, her permanent resident alien card was returned to her. She then obtained counsel, filed a second naturalization application, and was interviewed again. While that application was pending, she was served with an Order to Show Cause and Notice of Hearing (Form I-221), which alleged that she had committed fraud or willful misrepresentation of a material fact, that she lacked a valid immigrant visa, and that she had no valid labor certification. She was charged with being deportable on the basis that she was excludable at entry on those grounds. At a deportation hearing before the Immigration Judge, she reiterated the same explanation that she had provided to the naturalization examiner pertaining to her good faith belief that the "marriage contract" had not been recorded, and that even if recorded, it did not constitute a valid marriage under the laws of the Philippines. She elaborated on her explanation, stating further that the contract was obtained after she had become pregnant while unmarried, in order to give the appearance that she was married and to preserve her position in Saudi Arabia where an unwed pregnancy would not be tolerated.

In my view, the first matter to be resolved is whether the respondent has been properly found to be deportable on the basis of fraud or a willful misrepresentation that renders her excludable at entry as charged.[1] As the respondent is deportable on the two additional underlying grounds of inadmissibility on which the Immigration and Naturalization Service bases its "excludable at entry" charge, it may appear that whether or not the respondent was properly determined to be excludable at entry under section

---

[1]Although the respondent does not argue this point on appeal with regard to deportability per se, she does brief and argue the point in the context of her appeal of the Immigration Judge's discretionary denial of a waiver under section 241(a)(1)(H) of the Act, and in her motion to remand.

212(a)(6)(C)(I) of the Act has little practical relevance to the resolution of this appeal. In addition, the waiver she seeks does not require that she engaged in fraud or a willful misrepresentation, but also cures innocent misrepresentations and depends only on her having entered with an immigrant visa that was invalid. Nevertheless, the characterization of the respondent's initial entry to the United States as an immigrant is critical to our decision to remand her case and to the ultimate exercise of discretion over her application for a waiver under section 241(a)(1)(H) of the Act, as well as to her eligibility for other forms of relief under the Act.

### A. Absence of Clear, Unequivocal, and Convincing Evidence of Fraud or Willful Misrepresentation

The respondent did not concede being deportable on the ground that she was excludable at entry on the fraud or willful misrepresentation grounds contained in section 212(a)(6)(C)(i) of the Act.[2]  Instead, she was found to be deportable by the Immigration Judge on each of the three grounds underlying the charge that she was excludable at entry.

The transcript reflects quite clearly that on April 18, 1995, the respondent's attorney stated on her behalf that she (1) admitted to having entered the United States in 1987 as the unmarried son or daughter of a United States citizen; (2) admitted to having been married on the date she entered the United States, and therefore, to being ineligible to receive a visa; (3) denied that she was asked whether she was married or unmarried by the consular officer who issued the immigrant visa; and (4) denied having come to the United States to perform skilled or unskilled labor without a valid labor certification. She also denied each of the three grounds of inadmissibility referred to in the Order to Show Cause, on which the Service relied to establish deportability based on excludability at entry.

The Service acts as the prosecutor in deportation and removal cases, and has authority to determine the grounds of deportability that are charged, to issue the former Order To Show Cause or the current Notice to Appear (Form I-862) and serve it on the named respondent, and finally, to file the charging document with the Immigration Court. *See* 8 C.F.R. §§ 3.15, 239.1 (1998) (involving the contents and issuance of the charging document); *see also* 8 C.F.R. §§ 3.14, 240.40 (1998) (involving commencement of deportation proceedings). In deportation proceedings initiated prior to April 1, 1997, the Service bears the burden of proving deportability by "clear, unequivocal, and convincing evidence."  *See Woodby v. INS*, 385 U.S. 276

---

[2]The transcript reflects that occasional references to the respondent having conceded deportability were continually corrected by the Immigration Judge, who insisted consistently that he had *found* the respondent deportable,

(1966) (discussing the standard of clear, unequivocal, and convincing evidence that applies in deportation proceedings); 8 C.F.R. § 240.46(a) (1998) (providing that no decision on deportability shall be valid in the absence of evidence that is clear, unequivocal, and convincing); *see also* former section 242(b)(4) of the Act, 8 U.S.C. § 1252(b)(4) (1994) (mandating that no decision shall be valid unless based on reasonable, substantial, and probative evidence).

In light of the respondent's denial that she was asked by the consular officer whether or not she was married, as well as the respondent's denial of the charge that she was excludable at entry for having procured a visa or admission to the United States by fraud or willful misrepresentation of a material fact, the trial attorney representing the Service questioned the respondent as follows:

Q. Why did you not tell the consular officer that you were married?

A. In the first place, they didn't ask me anything about marital status, And in the second (*indiscernible*) that I should present while I worked in Saudi Arabia.

Q. Do you know if you told the consular authorities that you were married that you would have been denied a visa?

A. They didn't tell me anything about that.

Q. That wasn't the question ma'am. The question was *did you know that if you withheld the fact of your marriage*, that *you would not* be given a visa?

A. Yes.

(Emphasis added.)  As I believe the majority has erred in glossing over this aspect of the proceedings, I shall spell out the state of the record before us in relation to the governing standard requiring that deportability be established by evidence that is "clear, unequivocal, and convincing." *Woodby v. INS, supra; see also Matter of Bosuego*, 17 I&N Dec. 125 (BIA 1979).

First, although the respondent admitted having entered on an immigrant visa assigned to her as the unmarried daughter of a United States citizen, she denied having committed fraud or a willful misrepresentation of a material fact. Second, in the above-quoted colloquy with the Service attorney, the respondent denied having stated affirmatively during her immigrant visa interview either that she was married or unmarried; she attempted to explain something about the circumstances under which she got "married," but this explanation was cut off as "indiscernible" during the transcription process. Third, the respondent stated she was *not* informed that if she told the consular authorities that she was married her visa would have been denied. And fourth, she answered "yes" to the  rephrased question posed by the trial attorney for the Service, inquiring not whether she knew that *by providing*

information about her marriage she *would not* be given a visa, but instead, whether she knew that *by withholding* information about her marriage, she *would not* be given a visa.

The "indiscernible" portion of the respondent's response in the course of this colloquy, and her affirmative "yes" response to the question whether she knew she would be denied a visa if she did not reveal her marriage, leaves us with a muddled record in which the respondent's testimony is equivocal at best. The supposed evidence of deportability (on the ground of excludability at entry for fraud or willful misrepresentation) based on such interrupted and abbreviated testimony is not clear, much less convincing, *Cf, Woodby v. INS, supra*; 8 C.F.R. § 240.46(a).

## B. Elements of Fraud or Willful Misrepresentation of a Material Fact

Fraud or willful misrepresentation of a material fact, the statutory section on which the charge that the respondent was excludable at entry is based, was enacted by the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, replacing former section 212(a)(19) of the Act, 8 U.S.C. § 1182(a)(19) (1988), which addressed misrepresentations under an earlier version of the Act.[3] The statute provides:

> Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or entry into the United States or other benefit provided under this Act is excludable.

Section 212(a)(6)(C)(i) of the Act, 8 U.S.C. § 1182(a)(6)(C)(i) (1994). The Board has addressed what constitutes fraud or willful misrepresentation of a material fact in relation to excludability or deportability in administrative decisions issued both before and after the amendment of the Act in 1990. These decisions, as well as those of the Supreme Court and the United States Court of Appeals for the Ninth Circuit that are applicable to this case, support my conclusion that the respondent's statements at the time of her application for an immigrant visa, and thereafter, at her naturalization interview and in the deportation hearing that is the subject of this appeal, do not constitute either fraud or willful misrepresentation of a material fact, or false testimony.

---

[3]See section 601 of the Immigration Act of 1990, 104 Stat. at 5067, which recodified former section 212(a)(19) of the Act, as amended by section 6(a) of the Immigration Marriage Fraud Amendments of 1986, Pub. L. No. 99-639, 100 Stat. 3537, 3543-44 (adding the term "other benefit"); see also section 237(a)(1)(H) of the Act, 8 U.S.C. § 1227(a)(1)(H) (Supp. II 1996), applicable to cases initiated after April 1, 1997, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), in which Congress substituted the terms "admission" for "entry" and "inadmissible" for "excludable."

The principal elements of the ground of excludability contained in section 212(a)(6)(C)(i) of the Act pertinent to our determination are (1) fraud or (2) willfulness and (3) materiality. Fraud or a willful misrepresentation may be committed by the presentation of either an oral or written statement to a United States Government official, *Matter of Y-G-*, 20 I&N Dec. 794 (BIA 1994) (requiring that to sustain a charge of fraud, it must have been perpetrated on United States Government officials). Fraud requires that the respondent know the falsity of his or her statement, intend to deceive the Government official, and succeed in this deception. *Matter of G-G-*, 7 I&N Dec. 161 (BIA 1956), *See generally* Kathleen Sullivan, *When Representations Cross the Line*, Bender's Immigration Bulletin, Vol. 1, No. 11 (Oct. 1996).

Fraud or a willful misrepresentation is not limited to "false testimony," which requires that the actor have made a false statement under oath with the subjective intent of obtaining an immigration benefit.[4] *Kungys v. United States*, 485 U.S. 759, 780 (1988); *see also Bernal v. INS*, 154 F.3d 1020 (9th Cir. 1998) (holding that an applicant's false oral statements made under oath in a question-and-answer statement before a Service officer in connection with any stage of the processing of a visa or in a naturalization examination constitutes "false testimony" within the meaning of 8 U.S.C. § 1101(f)(6), and citing *Matter of Ngan*, 10 I&N Dec. 725 (BIA 1964)); *Phinpathya v. INS,* 673 F.2d 1013, 1018-19 (9th Cir. 1981) (stating that the "term testimony does not encompass all statements, or even all statements made under oath," but refers to "a statement made by a witness under oath for the purpose of establishing proof of a fact to a court or tribunal"), *rev'd on other grounds*, 464 U.S. 183 (1984). False testimony under section 101(f)(6) of the Act does not apply to concealment, *Kungys v. United States, supra,* at 780-81.

The respondent's first interaction with an official of the United States Government involved the consideration of her application for an immigrant visa. The respondent has testified consistently that at the time she initially provided the information that she was not married on her visa application, she did not believe she was legally married, as she understood the marriage contract she entered into in 1982 to be lacking in regularity and therefore ineffective under the law of the Phillippines. She also has stated consistently that she was not asked whether or not she was married or unmarried, and she did not testify under oath that she was married or

---

[4]Our consideration of whether the respondent, at any point, provided false testimony is not only relevant to excludability, but to the exercise of discretion under section 241(a)(1)(H) of the Act, and to the respondent's eligibility for suspension of deportation and voluntary departure, which require a showing of "good moral character" as defined in section 101(f)(6) of the Act, 8 U.S.C. § 1101(f)(6) (Supp. II 1996).

unmarried at the interview before the United States consular officer.

Both Board precedent and Ninth Circuit law require that a statement constituting a misrepresentation must be made with knowledge of its falsity for it to be considered "willful." *See Forbes v. INS*, 48 F.3d 439, 432 (9th Cir. 1995); *Matter of Healy and Goodchild*, 17 I&N Dec. 22 (BIA 1979) (recognizing that the alien must know that the statements he or she is making are false); *see also Espinoza-Espinoza v. INS*, 554 F.2d 921, 925 (9th Cir. 1977) (requiring that the statement must be made with knowledge of its falsity). Although a specific intent to deceive is not necessary, an accidental statement or one that is the product of honest mistake is not considered to be a "willful" misrepresentation. *See Sullivan*, *supra* (citing Foreign Affairs Manual, section 40.63, note 5.1). Moreover, a misrepresentation refers to some degree of affirmative conduct. Silence is not a misrepresentation, and does not "shut off a line of inquiry." *Matter of D-L- & A-M-,* 20 I&N Dec. 409 (BIA 1991); *Matter of G-*, 6 I&N Dec. 9 (BIA 1953).[5]

The concept of "materiality" presents a mixed question of law and fact, *United States v. Gaudin*, 515 U.S. 506, 521 (1995); *Kungys v. United States, supra,* at 770 (addressing the specific intent to obtain an immigration or naturalization benefit, and whether misrepresentation or concealment was predictably capable of affecting, or had a natural tendency to affect, the official decision under section 340 of the Act, 8 U.S.C. § 1451 (1988)); *id.* at 783 (Brennan, J., concurring). In *Matter of S- and B-C-*, 9 I&N Dec. 436 (BIA 1960; A.G. 1961), the Attorney General established that a misrepresentation is considered to be material if the respondent is excludable on the true facts; and the misrepresentation tends to shut off a line of inquiry relevant to the visa, document, or other benefit procured or sought to be procured that might have resulted in the alien's exclusion. *See, e.g., Matter of Hui* 15 I&N Dec. 228 (BIA 1975) (involving misrepresentation by a national of China about identity, birthplace, nationality, and birth date, by which he sought a nonresident alien Mexican border crossing card). However, a "harmless" misrepresentation that does not affect admissibility is not "material." *Cf. Matter of Martinez-Lopez*, 10 I&N Dec. 409, 414 (BIA 1962; A.G. 1964) (finding no materiality in the alien's misrepresentation of a job offer where he was not likely to become a public charge); *Matter of Mazar*, 10 I&N Dec. 80, 86 (BIA 1962) (finding no materiality in nondisclosure of involuntary communist party membership that would not have resulted in a determination of excludability).

---

[5]*See also Kungys v. United States, supra*, at 773 (distinguishing the "concealment or misrepresentation" clause of section 340(a) of the Act, 8 U.S.C. § 1451(a) (1988), which applies only "where the 'order and certificate of naturalization . . . were procured by concealment of a material fact or by willful misrepresentation,'" from false testimony that involves the procurement of other benefits, even resident visas that constitute a prerequisite to naturalization).

The validity of a marriage is generally governed by the law of the place of celebration, *Matter of Dela Cruz*, 14 I&N Dec. 686 (BIA 1974); *Matter of P-*, 4 I&N Dec. 610, 612 (BIA, A.G. 1952). As the respondent indicates in her brief on appeal, prior to its amendment in November 1987, Article 3 of the Philippines Civil Code, which was in effect at the time that she participated in obtaining the marriage contract, as well as when she applied for her immigrant visa and entered the United States as an immigrant, required (1) the authority of the solemnizing officer; (2) a valid marriage license (with certain exceptions); and (3) a marriage ceremony before the solemnizing officer in which the parties are present and make a personal declaration that they take each other as husband and wife in the presence of not less than two witnesses of legal age. Significantly, Article 4 states that "[t]he absence of any of the essential of formal requisites shall render the marriage void ab initio . . . ." *See Mayo v. Shiltgen*, 921 F.2d 177, 181 (8th Cir. 1990) (remanding for consideration of the petitioner's argument that if her marriage was void, she was not excludable).

The respondent admits to having participated in obtaining a marriage contract that was pre-dated and not based on what she believed was a valid license, not entered into before witnesses as required, not signed by the necessary witnesses, and, to the best of the respondent's understanding, not registered at the time it was obtained. Nonetheless, while neither the respondent's testimony nor the marriage contract obtained in 1982 constitutes clear, unequivocal, and convincing evidence of fraud or a willful misrepresentation, the evidence of the marriage contract's eventually having been recorded may establish that the respondent was, in fact, married prior to her immigrant visa interview and her entry to the United States. It cannot be disputed that the fact of the respondent's having been married, if indeed she was married under the law of the Philippines, was material to her eligibility for an immigrant visa at the time she presented her immigrant visa application to the consular officer. *Matter of Anabo*, 18 I&N Dec. 87 (BIA 1981) (finding an affirmative misrepresentation made by a visa applicant who claims to be single, when he actually is married, to be material).

Legally material and factually erroneous though the respondent's representation that she was not married may prove to be, however, I do not believe the record supports the conclusion that the respondent made a willful misrepresentation. The respondent's consistent testimony, which is uncontroverted and plausible in light of the documentary evidence, is that she did not believe the marriage contract she obtained constituted a valid, legal marriage. Until she was confronted at her first naturalization interview, she was unaware that the marriage contract actually had been recorded.

Furthermore, although the respondent testified that she now accepts that she is considered to have been married in 1982 as the result of the marriage contract, there is no evidence that the respondent's representation on her immigrant visa application that she was not married was made with

426

knowledge of its falsity, *Cf. Forbes v. INS, supra*. Similarly, as discussed below, the respondent's failure to list her two children on her immigrant visa application, while material, is not an adequate basis on which to conclude that she committed fraud or willful misrepresentation. As the respondent's misrepresentation must be made with knowledge of its falsity to be "willful," her innocent misrepresentation does not establish a willful violation under section 212(a)(6)(C)(i).

### C. Erroneous Finding That the Respondent "Lied" in Relation to 212(a)(6)(C)(i) of the Act

The Immigration Judge not only found that the respondent was deportable due to being excludable at entry under section 212(a)(6)(C)(i) of the Act, but found that the respondent "lied." In order to uphold these findings, we would have to reject the respondent's consistent testimony explaining her lack of knowledge and intent, without any affirmative evidence that the respondent knowingly engaged in a willful misrepresentation. We would have to draw the inference that she knew her 1982 marriage to be lawful and stated she was not married on her immigrant visa application knowing that representation to be false. We not only would have to reject her affirmative testimony that she understood the 1982 marriage contract into which she entered not to have been "registered," but would have to overlook the fact that, as shown to the respondent at her naturalization interview, the document still does not appear to be properly executed and lacks the requisite witness signatures.

Such unsupported adverse inferences are simply unreasonable. In *Matter of Bosuego, supra*, at 128, the Board held that where the respondent had applied for a nonimmigrant visa, but failed to disclose that she was a college graduate with a sister residing in the United States, "the likelihood that knowledge of those facts would have led to a finding that the respondent was inadmissible" was "undeterminable from the record before us." Citing *Woodby v. INS*, *supra*, we stated that "[t]he element of materiality is a fact crucial to a finding of deportability" on fraud or misrepresentation grounds, *Matter of Bosuego, supra*, at 131. Ah, one might counter, but in the instant case, the true facts do seem to indicate that the respondent was married, and therefore, by representing that she was not married and failing to mention the names of her first two children, she shut off a line of inquiry that might have resulted in her being excluded.

However, this is not consistent with *Bosuego*, in which the Board found that the record did not contain any reference to other pertinent factors that might have influenced the consular officer's decision. Similarly, in the instant case, the Service failed to develop any evidence concerning whether or not the marriage contract was either witnessed or recorded in 1982, at the time the respondent applied for her immigrant visa, or concerning the way

in which the respondent presented herself in other contexts, the way in which her husband viewed their having entered into the contract, the law of the Philippines, or any other factor bearing on either the materiality of the misrepresentation or the respondent's knowledge of its probable falsity. Likewise, in *Matter of Salazar*, 17 I&N Dec. 167 (BIA 1979), the respondent testified that when he left the United States to attend his immigrant visa interview, he was separated from his wife but intended to rejoin her, that he never was asked any questions about the status of his marriage at his visa interview, and that he knew the visa petition his wife had filed had been revoked, but did not know the date of revocation. The Board stated that "[g]iven this state of affairs, and the apparent uncertainty of his marriage at that time, it cannot be said that the Service has carried its burden in establishing that the applicant was in fact aware of what had transpired concerning his visa petition, and that his failure to volunteer information . . . constituted a willful misrepresentation of a material fact." *Id.* at 170.

The Immigration Judge's finding that the respondent lied on her immigrant visa application is unsupported on the record and has been refuted by the respondent. In quoting the respondent's supposed "lie," the Immigration Judge relies on the respondent's testimony that she was married one time in a religious ceremony in a church to her husband, and her repeated disclaimer that she was not previously married in a civil ceremony. The respondent's statement is only a "lie," however, if she made it willfully, believing it to be a false statement, *Forbes v. INS, supra*. Clearly, as the respondent has insisted over a 10-year period from 1987 to the present—in the context of a visa application, a visa interview, two naturalization applications, two naturalization interviews, and one deportation hearing—she did not believe that her act of obtaining a "marriage contract" in 1982 created a valid marriage. Consequently, in her mind and to her understanding such a declaration was not false.

The Immigration Judge's conclusion that the Service had established deportability as to the respondent's being excludable at entry because of fraud or a willful misrepresentation of a material fact is erroneous, and does not constitute a valid decision. *See* section 242(b)(4) of the Act.[6] Similarly, as the respondent's subsequent statements, including oral testimony under oath that she provided in either the naturalization interviews or at her deportation proceeding, restated her honest belief that, until confronted at the first naturalization interview, she believed that she was not married, there is

---

[6]Similarly, although the burden of proof would be on the respondent in the case of an affirmatively filed application for naturalization benefits, I do not believe that there is evidence from which we can draw a reasonable inference that the respondent engaged in fraud or willful misrepresentation, or gave false testimony in her naturalization application(s) or at her interview(s) on those applications.

insufficient evidence to conclude that the respondent provided false testimony within the meaning of section 101(f)(6) of the Act.

### III. CONSIDERATION OF A WAIVER UNDER SECTION 241(a)(1)(H)OF THE ACT

The intent of Congress in enacting former section 241(f), 8 U.S.C. § 1251(f) (1988), later codified at section 241(a)(1)(H) of the Act, was a humanitarian desire to unite families and preserve family ties. The fundamental purpose for such legislation was to forestall deportation where it would break up a family composed in part of United States citizens or lawful permanent residents. *See INS v. Errico*, 385 U.S. 214 (1966) (holding that aliens who had made fraudulent representations to the visa-issuing official and who had been charged with deportability for being excludable at entry as not nonquota or preference quota immigrants as specified in their visas were saved from deportability when they had the relatives prescribed by the statute); *see also Reid v. INS*, 420 U.S. 619 (1975) (limiting benefits under section 241(f) where the Service relies on a ground of deportation such as former section 241(a)(2) of the Act—entry without inspection—which does not rest on excludability unrelated to misrepresentations); *Matter of Da Lomba*, 16 I&N Dec. 616 (BIA 1978) (holding that it is not necessary that a deportation charge be brought under former section 212(a)(19) of the Act in order for section 241(f) to be operative if, in fact, immigration documentation was obtained by fraud).

My conclusion that the record cannot support the finding that the respondent engaged in fraud or willful misrepresentation may appear to present a rather confounding situation, as the respondent is seeking a waiver under section 241(a)(1)(H) of the Act, which presupposes excludability under section 212(a)(6)(C)(i) of the Act. However, as discussed below, according to both the express language of the statute and administrative precedent, the waiver is available to overcome not only willful, but innocent, misrepresentations. In addition, it should be obvious that if there was no "initial fraud," the scope of the Attorney General's discretion in adjudicating eligibility for such a discretionary waiver must take into account the nature of any affirmative misrepresentation, as well as any silence not amounting to a misrepresentation.

### A. Innocent Misrepresentations

Eligibility for a waiver under section 241(a)(1)(H) of the Act does not depend on the respondent having made a fraudulent or willful misrepresentation, In *Matter of Ideis*, 14 I&N Dec. 701 (BIA 1974), the Board held that despite the fact the respondent committed no fraud in connection with her admission for permanent residence as the unmarried daughter of a lawful

permanent resident her innocent misrepresentations that her father was a lawful permanent resident were sufficient to bring her within the purview of the provisions of section 241(f) of the Immigration and Nationality Act, as amended.

We concluded that although the record indicated that the respondent did not commit fraud, it was clear that she made an innocent misrepresentation, which was "sufficient to bring the respondent within the terms of section 241(f)." *Matter of Ideis, supra*, at 703; *see Matter of Louie*, 14 I&N Dec. 421 (BIA 1973) (finding that despite the absence of fraud, entry as a preference immigrant in reliance on the erroneous belief a sibling was a citizen is covered by section 241(f) of the Act, which encompasses innocent misrepresentations); *Matter of Torbergsen*, 13 I&N Dec. 432 (BIA 1969) (finding a section 241(f) waiver available, notwithstanding the fact that there was no fraud and the respondent was not in possession of a labor certification at time of entry); *see also Castillo-Godoy v. Rosenberg*, 415 F.2d 1266 (9th Cir. 1969); *Matter of Lim*, 13 I&N Dec. 169 (BIA 1969) (reversing a prior decision that had concluded, "anomalous as it might seem, the bounty of section 241(f) extended only to those guilty of fraud, and not to the innocent," in favor of a more liberal construction).

## B. Effect of the Supreme Court's Decision in *INS v. Yueh-Shaio Yang*

I agree with the majority that after *INS v. Yueh-Shaio Yang, supra*, it is clear that the Attorney General may consider a broad panoply of factors in determining whether a waiver under section 241(a)(1)(H) of the Act is warranted as a matter of discretion. I emphasize, however, as did the Supreme Court, that were the Attorney General to treat the fact of the initial fraud or willful misrepresentation as tipping the discretionary equation to require denial, such a result might constitute an abuse of discretion contrary to the express terms of the statute, 117 S. Ct. at 353.

Moreover, I strongly disagree that the proper discretionary standard involves a balancing of "an alien's undesirability as a permanent resident with the social and humane considerations" present in the case, in order to determine "whether a grant of relief is in the best interests of this country." *Matter of Tijam*, Interim Decision 3372, at 6 (BIA 1998). Such language, casually imported by the majority from the discretionary standard we articulated in *Matter of Marin*, 16 I&N Dec. 591 (BIA 1978) ("*Marin* test"), involving a discretionary waiver of excludability under former section 212(c) of the Act, 8 U.S.C. § 1182(c) (1976), is wholly unrelated to the discretionary determination that we are making in the instant case under section 241(a)(1)(H) of the Act. Although we recently adopted the *Marin* test as the standard in *Matter of Mendez*, 21 I&N Dec. 296 (BIA 1996), adapting it for application in discretionary waiver determinations under section 212(h) of the Act, waivers sought under both section 212(h) and former sec-

tion 212(c) primarily involve convicted criminals.

By contrast, as uniformly interpreted by the Supreme Court and the Board alike, the statutory provision for a waiver under section 241(a)(1)(H) of the Act focuses primarily on maintaining families that have come into being after the respondent's willful or innocent violation of the Act. As opposed to focusing principally on after-acquired equities related to family ties and family unification, which, undisputedly, is the essential underlying purpose of a waiver under section 241(a)(1)(H) of the Act, the *Marin* test takes into account an alien's anti-social criminal activity, and any rehabilitation that he or she may have established, in addition to other factors such as length of residence in the United States, family ties, and any hardship to the respondent or family members that might result from deportation.

In the context of adjudicating a waiver for relief under section 212(h) or former section 212(c) of the Act, it is the fact of the anti-social conduct or criminal activity, such as prostitution or an actual criminal conviction in violation of the Act, that warrants assessing the respondent's "undesirability as a permanent resident," and determining whether granting discretionary relief is "in the best interests of this country."[7] No such limitation should exist with respect to a waiver adjudication under section 241(a)(1)(H) of the Act. This waiver is premised upon the acceptance of an entry having been made on the basis of an invalid immigrant visa that could have been the result of nothing more than an innocent misrepresentation. As George Orwell said in his novel, *Animal Farm*, all animals are not equal, and similarly, all immigration violations are not equal, The *Marin* test is not, and should not be imposed as, the ultimate unified basis for discretionary adjudications.

A denial of a waiver is reviewed for an abuse of discretion, *See Hernandez-Robledo v. INS,* 777 F.2d 536 (9th Cir. 1985); *Batoon v. INS*, 707 F.2d 399, 401 (9th Cir. 1983). What the *Yang* decision clarifies is that, although the initial fraud may be waived, it still may be considered as one of several factors that the Attorney General takes into account in determining whether or not to grant a waiver of a misrepresentation that resulted in issuance of an immigrant visa. No more, no less, *Cf. Delmundo v. INS*, 43 F.3d 436 (9th Cir. 1994) (finding that although subsequent fraud may be an extension of an initial fraud, which may be excused, perpetuation of that fraud on the Immigration Court may be considered as a factor in assessing

---

[7]Although a waiver under former section 212(c) of the Act was available to overcome any exclusion ground other than those relating to national security, or to overcome any ground of deportability that had a counterpart in the applicable exclusion grounds of the Act, no reported case since our precedent in *Matter of Marin*, decided over 20 years ago, involved an application for such a waiver on grounds other than those relating to criminal convictions or crime-related violations of the Act.

eligibility for a waiver); *Hernandez-Robledo v. INS*, *supra*, at 541 (holding that "the inquiry is not into the illegality of his or her presence in the United States but the reasons that an alien should be allowed to stay, despite the illegality"). The Supreme Court's decision does not authorize superimposition of an agency-created test that involves a policy judgment concerning the "best interests of the country," and such a test is inapposite to the nature of the waiver involved. It merely makes clear that in the course of weighing and balancing favorable and adverse factors, the initial immigration violation that gives rise to the need for a waiver under section 241(a)(1)(H) of the Act, and any subsequent violations that flow from that initial violation, can be considered and weighed as part of the discretionary equation.

Thus, despite my general agreement with the notion that any fraud committed by a waiver applicant may be taken into account in balancing the favorable and adverse factors. I disagree with certain aspects of the majority decision related to the treatment of the respondent's waiver application. Specifically, in the instant case it is significant that the record contains no evidence that the respondent's misrepresentation was other than innocent, based on her honest but mistaken belief that she was not married because the marriage contract into which she had entered was not valid, even if recorded. Although the majority talks in terms of "concealment," asserting that the respondent "concealed" that she was married and "failed to disclose" that she had two children, concealment really is not an applicable concept in the context of determining either fraud or willful misrepresentation, or false testimony. *See supra* note 5. Moreover, just as the Supreme Court has construed the term "concealment" in the context of the denaturalization provisions, "concealment," no less than the misrepresentation, must be shown to have been willful. *See Fedorenko v. United States*, 449 U.S. 490, 508 n.28 (1981); *Costello v. United States*, 365 U.S. 265, 272 n.3 (1961). A reasonable evaluation of the favorable and adverse factors presented relevant to the respondent's eligibility for a discretionary waiver must take into account that there is no evidence of fraud or willful misrepresentation.

Furthermore, in *Casem v. INS*, 8 F.3d 700 (9th Cir. 1993), the Ninth Circuit held that hardship to children was a central issue in the adjudication of the waiver. The Ninth Circuit found that in a "statutory provision similar to section 1251(a)(1)(H), . . . [the Attorney General is allowed] at her discretion to suspend a deportation order if, among other things, 'deportation would . . . result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence . . . .'" *Id.* at 703 (quoting section 244(a)(4) of the Act, 8 U.S.C. § 1254(a)(1)). The court stated that section 241(a)(1)(H) of the Act, which is limited to aliens excludable at the time of entry due to fraud or misrepresentation, "requires that the BIA take into account all relevant factors without acting in an arbitrary, illegal, or irrational fashion, *Braun v.*

*INS*, 992 F.2d 1016, 1018-19 (9th Cir. 1993)." *Id.* at 702. The court went on to state, "We have admonished the INS in section 1254(a)(1) cases to appraise carefully the effect deportation would have on an alien's children who are United States citizens. *See Cerrillo-Perez v. INS*, 809 F.2d 1419, 1426 (9th Cir. 1987)." *Id.* at 703.

As the Ninth Circuit has emphasized, "Congressional intent was similar with regard to section 1251(a)(1)(H) . . . [which was] enacted . . . to prevent the break-up of families comprised in part of American citizens or lawful permanent residents. . . . Congress 'was intent upon granting relief to limited classes of aliens whose fraud was of such a nature that it was more than counterbalanced by after-acquired family ties.'" *Casem v. INS, supra*, at 703 (quoting *Reid v. INS, supra*, at 630). The Ninth Circuit explained, therefore, that "[a]lthough the statute does not set forth that factor for particular consideration . . . in making the epochal decision of whether to allow an alien to remain legally with her family . . . the BIA must consider hardship to the children of potential deportees along with all other relevant factors." *Id.* The Ninth Circuit concluded that "[t]he inquiry into family ties, however, must not be limited to noting the benefits of living near one's immediate or extended family. The BIA also must examine the impact of 'untying' the family ties Congress sought to safeguard." *Id.*

## IV. CONCLUSION

On the record before us, I conclude that the respondent's misrepresentations have not been shown to be other than innocent ones. Not only must the innocence of these representations be taken into account on remand, but the weighing and balancing of favorable and adverse factors must be exercised, consistent with the purpose of the legislation underlying the repeated enactment of section 241(a)(1)(H) of the Act, which is maintaining families.