HAMILTON, Circuit Judge.
Petitioner Mohamed Bouras, a citizen of Algeria, was granted status as a conditional permanent resident based on his marriage to a U.S. citizen. That marriage ended by divorce before Bouras had obtained unconditional permanent residency. He was later placed in removal proceedings after he failed to convince the United States Citizenship and Immigration Services that he had entered the marriage in good faith.
In immigration court, Bouras sought a discretionary waiver available to aliens who can show that they entered in good faith a failed marriage with a U.S. citizen. Bouras testified at the final removal hear *667 ing, but neither his ex-wife nor any other witness appeared at the hearing to testify about the marriage. At the end of the hearing, Bouras sought a continuance so that his ex-wife could testify as well. The immigration judge denied that request, saying that no “extenuating circumstances” justified a continuance. The judge then found that Bouras was not eligible for the discretionary waiver because he had not established the marriage had been in good faith. The Board of Immigration Appeals upheld that decision, including the denial of a continuance. The Board endorsed the judge’s explanation and added its own reasons for concluding that Bour-as’s request for a continuance was properly denied. Bouras has petitioned for review. He does not challenge the judge’s and the Board’s finding that he failed to prove his case. He argues only that he should have been granted a continuance so that his ex-wife could testify on his behalf. We deny the petition. The denial of Bour-as’s last-minute request for a continuance was not an abuse of discretion.
I. Factual and Procedural Background
Bouras entered the United States in 1997 as a non-immigrant visitor for business. See 8 U.S.C. § 1101(a)(15)(B); 22 C.F.R. § 41.31(a). He overstayed his visa and thus was, like so many others, living in this country illegally. In September 2006, while Bouras was living in Chicago, he married Jennifer Schreiner, a U.S. citizen who lived in Ohio. A year after marrying he became a conditional permanent resident based on that marriage. See 8 U.S.C. § 1186a(a)(l); 8 C.F.R. § 216.1.
To gain unconditional status, a conditional permanent resident must establish that he or she entered into the marriage in good faith. This showing is made most often by filing a joint petition with the citizen spouse and appearing with the spouse for a personal interview. 8 U.S.C. § 1186a(c), (d); 8 C.F.R. § 216.4(a)(1), (b). The necessary “Petition to Remove Conditions on Residence” (also called a Form I-751) can be filed only within the 90-day period before the second anniversary of obtaining conditional permanent residency. 8 U.S.C. § 1186a(d)(2); 8 C.F.R. § 216.4(a)(1).
If the marriage ends before the alien has satisfied these requirements, the alien can still obtain unconditional status by filing the Form 1-751 without the spouse and requesting a discretionary waiver. To receive the discretionary waiver—and with it, the removal of the conditions on residence—the alien must demonstrate that the marriage was entered in good faith even though it later failed. 8 U.S.C. § 1186a(c)(4)(B); 8 C.F.R. § 216.5(a)(1)®.
In early 2009, Bouras and Schreiner divorced. For most of their two-and-a-half year marriage, Bouras had continued working in Chicago while Schreiner remained in Ohio. For at least six months of their marriage, Bouras had returned to Algeria alone to visit his family. After the divorce, Bouras submitted a Form 1-751 to United States Citizenship and Immigration Services requesting a discretionary waiver of the joint-filing requirement. As evidence that his marriage to Schreiner was in good faith, Bouras submitted an affidavit from Schreiner, as well as letters and affidavits from several friends and family members, utility bills, photographs of him with Schreiner, copies of unsigned joint income tax returns saying that Bouras had been unemployed and earned nothing during their marriage, an e-mail from Southwest Airlines confirming Schreiner’s purchase of a ticket from Ohio to Chicago in December 2006, Bouras’s Ohio driver’s license and car title, an undated letter showing that Schreiner had opened a joint checking account with Fifth Third Bank, *668 and two bank statements from Fifth Third showing minimal activity in that account.
In her brief affidavit, Schreiner said that she had lived in Columbus during the marriage while Bouras lived in Chicago. She explained that he did so only because he could not find a job in Ohio, and that every month he took a couple of weeks off from his job driving a cab in Chicago to live with her in Columbus. Schreiner said that she and Bouras had divorced because he wanted children and she did not (she had two young children from a previous marriage). She said that she had changed the electric service for her home into Bouras’s name to make him feel like he “belong[ed] in [their] home” and that they had a joint checking account with Fifth Third Bank that “was not utilized often.” Schreiner also said there were not many pictures of the couple because usually one of them was taking the pictures, mostly of her children. In the other affidavits and letters submitted by Bouras, family and friends described interactions with the couple.
In early 2010, USCIS denied Bouras’s request for a waiver, finding that he had failed to show by a preponderance of the evidence that he and Schreiner married in good faith. The agency noted, among other things, that the couple had not lived together during the marriage. (Everyone recognizes that married couples may sometimes need to live apart for a host of reasons. See, e.g., Surganova v. Holder, 612 F.3d 901, 905 (7th Cir.2010). Still, an undocumented alien’s brief marriage to a U.S. citizen, during which the couple spent little or no time together and kept their property and finances separate, raises obvious warning signs for immigration authorities. See 8 C.F.R. § 1216.5(e)(2) (stating that evidence relevant to “whether an alien entered into a qualifying marriage in good faith ... may. include ... [documentation relating to the degree to which the financial assets and liabilities of the parties were combined” and “[documentation concerning the length of time during which the parties cohabited after the marriage and after the alien obtained permanent residence”).) Bouras’s status as a conditional permanent resident was terminated, and the agency issued a Notice to Appear charging him with removability. See 8 U.S.C. § 1227(a)(l)(D)(i).
At a February 2011 appearance before the immigration judge, Bouras conceded removability but renewed his request for a discretionary waiver of the joint filing requirement. A year later, in February 2012, the immigration judge scheduled the final removal hearing for August 2012. Notice of that hearing was sent to Bour-as’s lawyer. About three weeks before the hearing date, Bouras tendered as evidence essentially the same materials he had tendered in support of his Form 1-751. He also submitted a witness list naming both himself and his ex-wife, Schreiner.
At the beginning of the final removal hearing, Bouras’s lawyer announced that Schreiner had sent him a fax earlier in the week saying she would be unable to attend. In the fax, dated five days before the hearing, Schreiner said that she had been “just notified” of the hearing date and was unable to take time off work for the next six to eight weeks because she was needed to train a new hire. Bouras’s lawyer did not request a continuance at that time but went forward with the hearing, calling Bouras to testify.
Bouras testified that he first met Schreiner while visiting Columbus, Ohio, in 2005 and married her a year later. He had worked as a cab driver in Chicago during the marriage, Bouras said, because he needed the money and his efforts to find work in Columbus (by running a hotdog stand and obtaining a chauffeur’s li *669 cense) were unsuccessful. According to Bouras, he routinely worked in Chicago for two or three weeks and then joined Schreiner in Columbus for two weeks. During the marriage, he also had spent a total of six months visiting Algeria, though never with Schreiner. Bouras testified that he and Schreiner split up because he wanted children but she did not.
When asked about the joint tax returns he had submitted, Bouras said that Schreiner sent them to use as evidence in the removal proceedings but that he had never seen them before. He acknowledged that his income was not reported on the returns. He said that he and Schreiner did not jointly own any property, but said he had contributed half of the mortgage payments on Schreiner’s house during the marriage. When asked about the couple’s seldom-used joint checking account, Bouras said he did not have records showing how often the account had been used. He said that he had withdrawn money from the account to buy equipment for his hotdog stand but no longer had records of those purchases.
After Bouras finished his testimony, his counsel for the first time requested a continuance so that Schreiner could testify. The immigration judge denied the request, explaining that he does not “continue the cases once they’re scheduled for a final hearing unless there’s an emergency situation” or “unless there’s some extenuating circumstance.”
The judge then gave his oral decision denying Bouras’s petition for a discretionary waiver and ordering him removed to Algeria. The judge found not credible Bouras’s testimony that he lived apart from Schreiner because he could not find work in Columbus. Because no witnesses were available for cross-examination, the judge gave little weight to the affidavits that Bouras had submitted. The affidavits were further undermined, the judge reasoned, by the facts that the couple did not have joint assets and that Bouras was unfamiliar with his own purported tax returns. Finally, the judge noted that Bour-as had made several long trips to Algeria during the brief marriage, always without Schreiner. The judge did not find that the marriage was a sham, but he found that Bouras had failed to meet his burden of proving that he entered into the marriage in good faith.[1]
The Board upheld the immigration judge’s denials of the discretionary waiver *670 and the request for a continuance. The Board agreed with the judge that Bouras had failed to prove by a preponderance of the evidence that his marriage to Schreiner was in good faith. The Board also concluded that the judge had correctly denied Bouras’s request for a continuance because, the Board explained, Bouras had not demonstrated good cause as required by regulation. See 8 C.F.R. § 1003.29. The judge’s refusal to grant a continuance was justified, the Board reasoned, because Bouras (1) had waited until the day of the final hearing to request the continuance, (2) had not “explained why his ex-wife was apparently not provided notice until a few days before the hearing,” and (3) had not clarified whether his ex-wife “could provide testimony by phone or in-person on a date that would not conflict with her work schedule.”
II. Analysis
Bouras’s petition for review does not challenge the immigration judge’s conclusion, affirmed by the Board, that he failed to meet his burden of proving that he married Schreiner in good faith. Nor does Bouras challenge on any other ground the denial of his application for the discretionary good-faith marriage waiver. Most challenges to the denial of such a waiver would be foreclosed by 8 U.S.C. § 1252(a)(2)(B)(ii), which restricts our review of decisions of the Attorney General or the Secretary of Homeland Security that are made discretionary by statute. See 8 U.S.C. § 1186a(c)(4) (providing that grant of good-faith marriage waiver is within discretion of Secretary of Homeland Security); Boadi v. Holder, 706 F.3d 854, 857 (7th Cir.2013); Fynn v. U.S. Attorney General, 752 F.3d 1250, 1252 (11th Cir.2014); Johns v. Holder, 678 F.3d 404, 405-06 (6th Cir.2012). Although 8 U.S.C. § 1252(a)(2)(D) could provide jurisdiction to review colorable legal and constitutional claims, Bouras has not raised any such claims.
The only decision that Bouras challenges in this court is the denial of his request for a continuance. We have jurisdiction to review that denial. Although we lack jurisdiction to review the discretionary denial of the good-faith marriage waiver, review of a related procedural motion (such as a motion for a continuance) is foreclosed “only if the agency’s rationale for denying the procedural request also establishes the petitioner’s inability to prevail on the merits of his underlying claim.” Calma v. Holder, 663 F.3d 868, 876 (7th Cir.2011); see Zambrano-Reyes v. Holder, 725 F.3d 744, 749 & n. 2 (7th Cir.2013); Morales alazar v. Holder, 708 F.3d 957, 960 (7th Cir.2013); Cruz-Mayaho v. Holder, 698 F.3d 574, 576-77 (7th Cir.2012). Here, the agency’s rationale for denying Bouras’s motion for a continuance—that he failed to establish good cause—does not affect whether he is entitled to or eligible for the discretionary waiver, so we have jurisdiction over his petition.
The scope of our review, however, is narrow. We review the denial of a motion for a continuance only for an abuse of discretion. See Calma, 663 F.3d at 878; Jonaitiene v. Holder, 660 F.3d 267, 272 (7th Cir.2011). Under this standard, we will uphold the denial of a continuance “unless it was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.” Calma, 663 F.3d at 878 (citations and internal quotation marks omitted). When, as here, the Board agrees with the immigration judge and supplements the judge’s decision with its own explanation, we review the judge’s decision as supplemented by the Board’s reasoning. See Barma v. *671 Holder, 640 F.3d 749, 751 (7th Cir.2011); Pawlowska v. Holder, 623 F.3d 1138, 1141 (7th Cir.2010).
By regulation, a party seeking a continuance must show “good cause.” 8 C.F.R. § 1003.29; Mozdzen v. Holder, 622 F.3d 680, 684 (7th Cir.2010). “Good cause” is not defined by the regulations, so the standard is interpreted by the Board “in different ways depending on the facts and circumstances presented.” Matter of Hashmi 24 I. & N. Dec. 785, 788 (BIA 2009). When a continuance is sought for the purpose of presenting additional evidence, the standard for granting the request is high. Id. At a minimum, the party must show that significantly favorable evidence is not currently available despite a good-faith effort to present it. See Adame v. Holder, 762 F.3d 667, 672-73 (7th Cir.2014); Hashmi 24 I. & N. Dec. at 788; Matter of Sibrun, 18 I. & N. Dec. 354, 356-57 (BIA 1983).
Bouras’s principal contention is that the immigration judge improperly denied the continuance based on “case completion goals.” He asserts that the judge’s “statements show that as a rule he will not consider continuance requests when the case is set for trial in the absence of an emergency.” The continuance was denied, Bouras insists, not because he lacked good cause but solely “because the case was set for trial already.”
We find no abuse of discretion. First, the record refutes Bouras’s assertion that the immigration judge applied an improper legal standard. The judge said that once a final hearing is scheduled, he grants continuances only when there is “an emergency situation” or “some extenuating circumstance.” We see no significant gap between that approach and the regulation’s good cause requirement applied by the Board and by this court. See Adame, 762 F.3d at 673 (petitioner seeking continuance must show, among other things, that he was “unable to procure the necessary evidence despite a diligent effort”); Si-brun, 18 I. & N. Dec. at 356 (petitioner seeking continuance “at least must make a reasonable showing that the lack of preparation occurred despite a diligent good faith effort to be ready to proceed”).
As the party seeking a continuance, Bouras bore the burden of showing good cause. See 8 C.F.R. § 1003.29; Mazariegos-Paiz v. Holder, 734 F.3d 57, 66 (1st Cir.2013); Ramchandani v. Gonzales, 434 F.3d 337, 338 (5th Cir.2005). To show that denying a continuance was an abuse of discretion, Bouras must show at the very least that Schreiner’s testimony would have been significantly favorable to him and that he made a good-faith effort to obtain her appearance. He has not shown either point.
First, Bouras never established that Schreiner’s testimony would have been significantly favorable to him. The only evidence we have of what she would have said is her affidavit. That affidavit does not undermine the judge’s findings that the couple had no joint assets, that their purported tax returns were suspect, and that Bouras had spent most of the marriage apart from Schreiner either in Chicago or Algeria. Bouras asserts that Schreiner “could have answered questions about the tax returns.” But Schreiner’s statement in her affidavit that Bouras had worked as a cab driver in Chicago directly contradicts the joint tax returns in which she reported that he was unemployed. Bouras does not tell us how Schreiner could explain this discrepancy. His challenge to the judge’s denial of the continuance fails because he has not shown that he was prejudiced by the decision. See Wang v. Holder, 759 F.3d 670, 675 (7th Cir.2014); Calma, 663 F.3d at 878.
*672 Second, even if we assume that Schreiner’s testimony would have been helpful, Bouras has not shown that he made a good-faith effort to ensure her presence. As the Board pointed out, Bouras has yet to explain why he blind-sided the judge by waiting until the day of the hearing—indeed, until the end of the hearing—to request a continuance when he knew five days before the hearing that his ex-wife would not be available. That failure distinguishes this case from those in which we have concluded that an immigration judge erred by denying a continuance to a petitioner seeking to submit additional evidence. See, e.g., Gjeci v. Gonzales, 451 F.3d 416, 419-24 (7th Cir.2006) (concluding that judge should have granted continuance to pro se petitioner when his lawyer unexpectedly withdrew shortly before merits hearing and kept documents critical to the case); Boyanivskyy v. Gonzales, 450 F.3d 286, 291-94 (7th Cir.2006) (granting petition for review where—despite petitioner’s best efforts to make witnesses available—judge arbitrarily scheduled merits hearing for date when judge knew none of the witnesses could testify).
As the Board noted, Schreiner said in her fax that she had just been told about the date of a hearing scheduled six months earlier. That statement undermined any claim that Bouras diligently sought her testimony. Bouras suggests Schneider’s phrase “just notified” is cryptic. It’s not precise, but it’s not consistent with a diligent effort by Bouras to make sure that she could attend the hearing. Bouras has not claimed that he had told her about the removal hearing long enough before she sent the fax for her to have planned to attend.
Bouras responds that it would not have mattered how far in advance Schreiner learned of the hearing date because she would have been unavailable due to the staffing shortage. The assertion does not persuade us that the denial was an abuse of discretion. Whether Schreiner might have been able to appear, either in person or otherwise, is a question of fact. Schreiner did not say, and has never said, that even with sufficient advance notice she would not have been able to adjust her work schedule to accommodate Bouras’s need for her testimony. And as the Board pointed out, witnesses in immigration proceedings may testify by telephone. See 8 U.S.C. § 1229a(b)(2); 8 C.F.R. § 1003.25(c). If Schreiner had been notified earlier—or if Bouras had requested accommodations before the hearing—perhaps arrangements could have been made for her to testify by telephone before or after work or during a break.[2] And while perhaps another immigration judge might have suggested that option, even at the end of the hearing, we see no basis for finding that it was an abuse of discretion for the judge not to make the suggestion himself.
Finally, Bouras argues that all of these reasons for denying his motion for a continuance are irrelevant because they were articulated by the Board rather than the immigration judge. As noted, however, the Board’s reasons are properly considered where, as here, the Board agrees with the judge’s decision and provides its own supplementary reasoning. See Barma, 640 F.3d at 751; Pawlowska, 623 F.3d at 1141.
*673 Accordingly, Bouras’s petition for review is DENIED.

. There was no inherent inconsistency in the immigration judge’s finding that Bouras had failed to meet his burden of proof without making an affirmative finding of a fraudulent marriage. To obtain the discretionary waiver, Bouras had the burden of proving good faith. 8 U.S.C. § 1186a(c)(4)(B); 8 C.F.R. § 216.5(a)(1)(h). The government has not taken the further step of trying to prove by clear and convincing evidence that the marriage was in fact fraudulent. See 8 U.S.C. §§ 1227(a)(1)(A), 1182(a)(6)(C)(i); Surganova v. Holder, 612 F.3d 901, 904 (7th Cir.2010). Such a finding could result in Bouras being barred for life from attaining immigration benefits through a citizen spouse or other relative. See 8 U.S.C. § 1154(c); Ogbolumani v. Napolitano, 557 F.3d 729 (7th Cir.2009) (affirming denial of visa to alien based on good-faith second marriage where government found that his first marriage had been fraudulent). Nor, quite sensibly, has the government tried to take the still further step of criminal prosecution, which is also possible. See 8 U.S.C. § 1325(c); United States v. Darif, 446 F.3d 701 (7th Cir.2006). We recognize that Bouras has offered evidence of a good-faith marriage that could have supported a discretionary finding in his favor. There is no evidence that he paid Schreiner to marry him, which is the typical hallmark of a sham marriage. Since the immigration system is certainly overburdened, it’s no surprise in this close case that the government has not tried to meet these higher burdens to impose punitive sanctions on Bouras in addition to his removal.

. Although. Bouras may have been unaware that witnesses could testify telephonically, the record shows that his lawyer was familiar with this option. Prior to the Master Calendar Hearing in February 2011, he filed an "Emergency Motion to Appear Telephonically.’' That motion was granted by the immigration judge and counsel appeared at the hearing via telephone.