[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 22-11486

Non-Argument Calendar

_____

ROHAN MANGROO,

                         Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

                         Respondent.

_____

Petitions for Review of a Decision of the
Board of Immigration Appeals
Agency No. A089-570-503

_____

———————————

No. 23-13811

Non-Argument Calendar

———————————

ROHAN MANGROO,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

———————————

Petitions for Review of a Decision of the
Board of Immigration Appeals
Agency No. A089-570-503

———————————

Before BRANCH, ANDERSON, and HULL, Circuit Judges.

PER CURIAM:

In this consolidated appeal, Rohan Mangroo petitions for review of the Board of Immigration Appeals' ("BIA") decisions (1) affirming the Immigration Judge's ("IJ") denial of Mangroo's

request for a discretionary waiver of inadmissibility under Immigration and Nationality Act ("INA") § 237(a)(1)(H), 8 U.S.C. § 1227(a)(1)(H), and (2) dismissing Mangroo's subsequent motion for reconsideration as untimely. After review, we dismiss in part and deny in part Mangroo's petitions.

## I. BACKGROUND FACTS

Mangroo is a native and citizen of Trinidad and Tobago. In April 1999, Mangroo (at age 34) entered the United States as a non-immigrant visitor and then overstayed his visa.

### A.    Adjustment of Status Based on Fraudulent Marriage

On October 1, 2002, Mangroo married Pamela Meagher, a U.S. citizen. Meagher was the mother of Mangroo's then-girlfriend Sharon Mackoon. Mangroo and Mackoon, who still resided in Trinidad and Tobago, already had an eleven-year-old daughter, Melissa, who also resided in Trinidad and Tobago. The marriage to Meagher was a sham.

In 2006, based on his sham marriage to Meagher, Mangroo sought adjustment of status, and on March 14, 2007, he became a lawful permanent resident and obtained a "green card." After Mangroo obtained his immigration benefits, Mangroo and Meagher divorced in November 2007.

### B.    Application for Citizenship and Admission of Fraud

In May 2012, Mangroo applied for naturalization to be a U.S. citizen. After interviewing Mangroo, a United States Citizenship and Immigration Services ("USCIS") officer determined that a

decision could not be made on Mangroo's application without further investigation.

On July 23, 2013, another USCIS officer visited Mangroo at his home. Upon questioning, Mangroo admitted to the USCIS officer that his prior marriage to Meagher was fraudulent. In two separate affidavits, Mangroo averred that he had married Meagher only to obtain valid immigration status so he could support his family. USCIS recommended Mangroo's removal.

## C.    Notice to Appear and Master Calendar Hearing

On October 27, 2014 the Department of Homeland Security served Mangroo with a Notice to Appear ("NTA"). The NTA charged Mangroo, *inter alia*, with removability under INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), as an alien who sought to procure entry or status by means of fraud or willful misrepresentation.

At a December 2, 2015 master calendar hearing before an IJ, Mangroo conceded his removability and indicated he planned to apply for a waiver of inadmissibility under INA § 237(a)(1)(H), 8 U.S.C. § 1227(a)(1)(H). A § 237(a)(1)(H) waiver is discretionary and specifically for certain aliens who have been found inadmissible due to fraud under § 212(a)(6)(C)(i). *See* 8 U.S.C. § 1227(a)(1)(H).

During the master calendar hearing, the IJ instructed Mangroo's counsel to request the § 237(a)(1)(H) waiver on Form I-601. When Mangroo's counsel questioned whether the form was needed, the IJ stated that Mangroo was "seeking a waiver of admissibility and the I-601 operates to waive that ground of

inadmissibility before this Court." Mangroo's counsel responded, "That's fine. We'll file it, Your Honor." At the IJ's urging, Mangroo's counsel also indicated that Mangroo would file an I-130 visa petition based on his relationship with his adult daughter, who is a U.S. citizen.

On December 9, 2015, Mangroo married Mackoon.

As directed, Mangroo filed a Form I-601 Application for Waiver of Grounds of Inadmissibility that requested a § 237(a)(1)(H) waiver, signed April 28, 2017. But Mangroo did not file the promised I-130 visa petition based on his relationship to his adult daughter.

### D.    Removal Hearing

At his May 2, 2019 removal hearing, Mangroo testified that he is married to Sharon Mackoon, with whom he has two daughters—Melissa who was 31 years old and Mikayla, who was 9 years old—and that both daughters are U.S. citizens. Mangroo explained that he entered the United States on a B-2 visa (in 1999) to look for work to support his then-girlfriend Mackoon and their daughter Melissa, who remained in Trinidad and Tobago.

When Mangroo could not find an employer to sponsor him, he became desperate to avoid deportation. Mangroo decided to marry Mackoon's mother, Pamela Meagher, "for the papers, for the Green Card." After marrying Meagher on October 1, 2002, Mangroo became a lawful permanent resident on March 14, 2007. During his five-year marriage to Meagher, Mangroo never lived with Meagher but instead lived with Mackoon, who had followed

him to the United States.  As noted, Mangroo divorced Meagher in November 2007.

In 2012, Mangroo applied for U.S. citizenship.  When an immigration officer came to his home, Mangroo admitted to the fraudulent marriage to Meagher.  Mangroo later signed an affidavit stating that he had entered into the fraudulent marriage to obtain residency to support his family.  At the hearing, Mangroo admitted he had done something wrong and apologized.  Mangroo said that he could not return to Trinidad and Tobago because his younger daughter did not like it there, the drugs and crime were "very bad," he had no relatives there, and his family would suffer because there is no work and the educational system is "very backward."

Mackoon also testified.  Mackoon described Mangroo's close relationship with their younger daughter Mikayla and said that Mikayla would "suffer tremendously" if Mangroo were removed because of her attachment to him.  Mackoon admitted that Mangroo had sisters and brothers in Trinidad and Tobago, but she insisted the family would be homeless if they returned there and that she would be unable to get a job.  Mikayla also appeared at the hearing and read a statement describing her close relationship with her father.

### E.    IJ's Decision

At the end of the hearing, the IJ entered an oral decision denying Mangroo's request for a § 237(a)(1)(H) waiver.  In doing so, the IJ found Mangroo and Mackoon credible except to the extent (1) they both claimed Mackoon was unaware of the

fraudulent marriage to her mother when it occurred and (2) Mangroo claimed Mackoon was not aware he had applied for U.S. citizenship.

The IJ identified positive factors that weighed in favor of relief, including that Mangroo had resided in the United States since 1999, did not have a criminal record, was in a 33-year relationship with Mackoon, with whom he has two daughters, had a very close relationship with his daughters, was gainfully employed, owned his home and vehicles, and showed remorse for his actions.

As to adverse factors, the IJ pointed to Mangroo's willingness to engage in marriage fraud and apply for lawful permanent residence and seek citizenship based on that fraud. The IJ also emphasized that Mangroo twice swore falsely under penalty of perjury in his application for adjustment to lawful permanent resident and then in his application for citizenship. The IJ pointed out that Mangroo did not admit to his fraudulent conduct until the government initiated an investigation.

The IJ acknowledged that Mangroo had many "weighty positive factors" and that his relatives would suffer emotional hardship if he was removed, but the IJ noted the hardship would not be "extreme" but rather the kind of hardship that is "common in cases of removal and deportation." The IJ observed that Mangroo's older daughter, Melissa, was a lawful permanent resident with her own family and that Mikayla could go with Mangroo to Trinidad and Tobago. The IJ concluded Mangroo did

not provide sufficient evidence to support his claims about the poor conditions in Trinidad and Tobago. And because Mackoon knew of Mangroo's marriage fraud with her mother in October 2002 and then married him in December 2015, only after his removal proceedings began in October 2014, Mackoon did not have a reasonable expectation that he could remain in the United States. The IJ noted that Mackoon risked losing her own lawful permanent resident status (obtained through her older daughter) if she moved to Trinidad and Tobago with Mangroo and would need to travel frequently to maintain her U.S. residence until becoming a U.S. citizen.

The IJ concluded that the favorable factors were "insufficient to overcome the extreme weight of [Mangroo's] fraud both at the time of adjustment of status and with respect to his application for United States citizenship." The IJ stressed that Mangroo's conduct included engaging in marriage fraud with his then-girlfriend's mother, acquiring lawful permanent residence through fraud, attempting to obtain citizenship through fraud, traveling out of the United States and knowingly gaining reentry to the country based on his fraudulent status, attending a citizenship interview with a government official and not admitting to fraud, and then only admitting the fraud after requiring the government to conduct further investigation. Accordingly, the IJ determined that Mangroo did not warrant a favorable exercise of discretion and denied his application for a waiver.

### F.     BIA Appeal

On appeal to the BIA, Mangroo argued that the IJ failed to give sufficient weight to his positive factors.

On March 31, 2022, the BIA adopted and affirmed the IJ's decision. The BIA disagreed with Mangroo that the IJ did not weigh factors properly and dismissed his appeal. The BIA reviewed the IJ's discretionary determination *de novo*, outlined the positive and adverse factors the IJ had identified, and agreed with the IJ that Mangroo did not merit a favorable exercise of discretion.

The BIA emphasized that Mangroo twice lied about the validity of his marriage under penalty of perjury, maintained that lie "at every point necessary to obtain an immigration benefit," and "only became truthful when confronted by an immigration officer years later in connection with his citizenship application."

### G.     Construed Motion for Reconsideration

On June 17, 2022, Mangroo filed a motion with the BIA styled a "Motion to Reopen." Mangroo argued that the IJ erred by (1) requiring him to file a Form I-601; (2) applying an improper legal standard—extreme hardship to a qualifying relative—to his § 237(a)(1)(H) waiver request; and (3) failing to address whether he could readjust his status based on his U.S.-citizen daughter Melissa, along with a different waiver under INA § 212(i), 8 U.S.C. § 1182(i), based on the extreme hardship to his now-wife Mackoon.

As to the last argument, Mangroo attached, *inter alia*, a new I-485 application for adjustment of status and a new I-130 family-

based petition filed on Mangroo's behalf by his daughter Melissa. Mangroo asked that his case be reopened so he could pursue these forms of relief. Mangroo also attached a copy of Melissa's naturalization certificate showing she became a U.S. citizen on July 18, 2014.

On October 20, 2023, the BIA construed Mangroo's motion to reopen as a motion for reconsideration and denied the motion. The BIA determined that Mangroo's motion was properly characterized as a motion for reconsideration because he did not seek to introduce previously unavailable evidence, as required to reopen proceedings, and instead alleged various errors by the IJ. To the extent Mangroo sought reconsideration, the BIA deemed the motion untimely because he did not file it within 30 days of the BIA's March 31, 2022 decision and had not identified an exception to the statutory time-bar.

The BIA also declined to reconsider Mangroo's proceedings *sua sponte* because he had not shown exceptional circumstances. The BIA acknowledged that Mangroo was correct that he did not need to file a Form I-601 to pursue a § 237(a)(1)(H) waiver but concluded any error in requiring him to do so was harmless. The BIA rejected Mangroo's claim that the agency applied the wrong legal standard in evaluating his waiver request, concluding both the BIA and the IJ considered the relevant factors, as outlined in *Matter of Tijam*, 22 I. & N. Dec. 408 (BIA 1998). As for the IJ not allowing Mangroo to pursue readjustment with a § 212(i) waiver, the BIA stressed that Mangroo had not addressed or rebutted the agency's

determination that a favorable exercise of discretion was not warranted, a finding that was "dispositive of [his] eligibility for a waiver, as well as for adjustment of status."

## II.  STANDARDS OF REVIEW

We review the BIA's decision and also the IJ's decision to the extent the BIA adopts the IJ's decision or expressly agrees with its reasoning. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). In deciding whether to uphold the BIA's decision, we are limited to the grounds upon which the BIA relied. *See Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016).

We review *de novo* all legal issues. *Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1289 (11th Cir. 2006). Likewise, we review *de novo* our own subject matter jurisdiction. *Clement v. U.S. Att'y Gen.*, 75 F.4th 1193, 1198 (11th Cir. 2023).

## III.  DISCUSSION

### A.    Section 237(a)(1)(H) Fraud Waiver

Mangroo applied for a waiver of inadmissibility under INA § 237(a)(1)(H). Under that provision, the Attorney General has the discretion to waive an alien's inadmissibility (and removal based on inadmissibility) under 8 U.S.C. § 1182(a)(6)(C)(i) due to immigration fraud if, among other things, the alien is the spouse, parent, or child of a U.S. citizen or lawful permanent resident. *See* INA § 237(a)(1)(H), 8 U.S.C. § 1227(a)(1)(H).

In *Tijam*, the BIA set forth favorable and adverse factors to be balanced in determining whether a § 237(a)(1)(H) waiver should

be granted as a matter of discretion. 22 I. & N. Dec. at 412-13.[1] The BIA explained that the waiver decision requires balancing a petitioner's "undesirability as a permanent resident with the social and humane considerations present to determine whether a grant of relief is in the best interests of this country." *Id.* at 412.

Adverse factors include the nature and underlying circumstances of the fraud or misrepresentation involved; the nature, seriousness, and recency of any criminal record; and any other evidence of the petitioner's bad character or undesirability as a lawful resident. *Id.* Favorable factors include long residence in the country, especially from a young age; evidence of hardship to the petitioner or his family if removal occurs; stable employment history; business or property ties; evidence of value and service to the community; and other evidence of the petitioner's good character. *Id.* at 412-13.

## B.    Jurisdiction

By statute, we lack jurisdiction to review "any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." INA § 242(a)(2)(B)(ii), 8 U.S.C. § 1252(a)(2)(B)(ii). We do, however, retain jurisdiction, under § 1252(a)(2)(D), to review "constitutional claims or questions of

---

[1] *Tijam* addressed INA § 241(a)(1)(H), which in 1996 was renumbered as § 237(a)(1)(H). *See* 22 I. & N. Dec. at 408 n.1.

law." INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D). The constitutional claim or question of law must be "non-frivolous," and it cannot simply be a "garden-variety abuse of discretion argument" framed as a question of law to evade the jurisdictional bar. *See Alvarez Acosta v. U.S. Att'y Gen.*, 524 F.3d 1191, 1196-97 (11th Cir. 2008).

Here, the waiver provision in INA § 237(a)(1)(H), 8 U.S.C. § 1227(a)(1)(H), specifies that whether to grant relief to an eligible alien is "in the discretion of the Attorney General." *See* 8 U.S.C. § 1227(a)(1)(H). Therefore, absent a constitutional question or question of law, we lack jurisdiction to review the discretionary denial of a § 237(a)(1)(H) fraud waiver. *Alhuay v. U.S. Att'y Gen.*, 661 F.3d 534, 549 (11th Cir. 2011).

Thus, we lack jurisdiction to review the agency's decision denying Mangroo a § 237(a)(1)(H) fraud waiver *as a matter of discretion*, including any claim that the agency weighed the evidence incorrectly in finding that a waiver was not warranted. *See Alvarez Acosta*, 524 F.3d at 1196-97.

## C.    Mangroo's § 237(a)(1)(H) Waiver Claim

Mangroo does raise one argument that presents a question of law.[2] Mangroo contends that the IJ erroneously applied an

---

[2] For the first time in his reply brief, Mangroo argues that, although he conceded his removability in the immigration court, he was in fact not removable for marriage fraud under 8 U.S.C. § 1182(a)(6)(C)(i). Mangroo's reply brief asserts that he raised this removability issue in his opening brief, but that is not correct. *See Sapuppo v. Allstate Floridian Ins. Co.,* 739 F.3d 678,

"extreme hardship" standard rather than a balancing test in denying his § 237(a)(1)(H) waiver request.

We have jurisdiction to review whether the IJ applied the proper legal standard. *See Makir-Marwil v. U.S. Att'y Gen.*, 681 F.3d 1227, 1234 n.4 (11th Cir. 2012). Here, however, Mangroo failed to exhaust this legal issue in his appeal to the BIA, as the government correctly points out.

We may review a final order of removal only after a petitioner has exhausted all administrative remedies available to him as of right. INA § 242(d)(1), 8 U.S.C. § 1252(d)(1). This exhaustion requirement is a claims-processing rule, rather than a jurisdictional rule. *Santos-Zacaria v. Garland*, 598 U.S. 411, 413, 419 (2023). But this exhaustion requirement is applied when, as here, it has been asserted by a party. *See Kemokai v. U.S. Att'y Gen.*, 83 F.4th 886, 891 (11th Cir. 2023).

To exhaust administrative remedies, a petitioner must raise the claim before the BIA clearly enough that the BIA can review and correct any errors below. *Indrawati v. U.S. Atty. Gen.*, 779 F.3d

---

681 (11th Cir. 2014) (explaining that a party must "plainly and prominently" raise a claim by "devoting a discrete section of his argument" to it and cannot merely make a "passing reference" to it "without advancing any arguments or citing any authorities" establishing there was error). Accordingly, we need not decide if we have jurisdiction to address this issue on appeal because Mangroo has forfeited any removability issue, and we decline to address it. *See Farah v. U.S. Att'y Gen.*, 12 F.4th 1312, 1324 (11th Cir. 2021).

1284, 1297 (11th Cir. 2015), *overruled on other grounds by Santos-Zacaria*, 598 U.S. at 415 n.2, 419-23 (2023).

Here, Mangroo did not exhaust his claim that the IJ incorrectly applied an "extreme hardship" standard. Mangroo's notice of appeal and his brief filed with the BIA argued only that the IJ gave too much weight to his adverse factors and not enough weight to his favorable factors. This argument is insufficient to raise clearly the alleged legal error Mangroo now raises in his petition for review. And, because the government raised the exhaustion requirement here, we can dispose of this claim on that basis alone. *See Kemokai*, 83 F.4th at 891.

We note, however, that even if Mangroo was not required to exhaust, or had exhausted, this claim in his BIA appeal, he still would not prevail. The record clearly shows that both the IJ and the BIA weighed the favorable and adverse factors identified in *Tijam*, one of which is the "evidence of hardship to the alien or [his] family if deportation occurs." 22 I. & N. Dec. at 412. Mangroo takes out of context the IJ's observation that the hardship Mangroo's family would suffer upon his removal was not extreme but rather common in cases of removal. When the IJ's analysis is considered as a whole, however, it is clear the IJ carefully weighed all of the *Tijam* factors, including the hardship to his family, and did not replace that balancing test with an "extreme hardship" standard, as Mangroo claims.

### D.    Motion to Reopen/Reconsider

Mangroo also argues that the BIA erred in recharacterizing his motion to reopen as a motion for reconsideration.

Ordinarily, we review for an abuse of discretion the BIA's denial of a motion to reopen or a motion for reconsideration and any underlying legal conclusions *de novo*. *See Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312, 1315 (11th Cir. 2022) (motion to reopen); *Calle v. U.S. Att'y Gen.*, 504 F.3d 1324, 1328 (11th Cir. 2007) (motion for reconsideration).  However,  when, as here, "direct review of the underlying order is barred by one of the INA's jurisdiction-stripping provisions, we also lack jurisdiction to entertain an attack on that order mounted through a motion to reopen." *Ponce Flores v. U.S. Att'y Gen.*, 64 F.4th 1208, 1223 (11th Cir. 2023) (quotation marks omitted).  In that circumstance, we retain jurisdiction to review only non-discretionary legal or constitutional questions underlying the requested relief. *See Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1262 (11th Cir. 2020) (en banc); 8 U.S.C. § 1252(a)(2)(D).[3]

Here, whether the BIA properly construed Mangroo's motion as a motion for reconsideration is a legal question we retain

---

[3] To the extent Mangroo challenges the BIA's denial of *sua sponte* reconsideration, we lack jurisdiction to review this discretionary decision and dismiss the petition.  *See Lenis v. U.S. Att'y Gen.*, 525 F.3d 1291, 1294 (11th Cir. 2008).

jurisdiction to review. For the reasons that follow, we can find no reversible error in the BIA's decision.

A petitioner in removal proceedings generally may file one motion to reopen proceedings, provided that the motion is filed within 90 days of the final administrative order of removal. INA § 240(c)(7)(C)(i), 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). A motion to reopen shall state "new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." INA § 240(c)(7)(A), (B), 8 U.S.C. § 1229a(c)(7)(A), (B). Motions to reopen may be granted if there is new evidence that is material and was not available and could not have been discovered or presented at the removal hearing. *See* 8 C.F.R. § 1003.2(c)(1).

Motions to reconsider, on the other hand, must be filed within 30 days of the entry of the removal order. INA § 240(c)(6)(A), (B), 8 U.S.C. § 1229a(c)(6)(A), (B). A motion to reconsider must specify the errors of fact or law in the BIA's prior decision—in this case, the BIA's decision affirming the IJ—and be supported by pertinent authority. INA § 240(c)(6)(C), 8 U.S.C. § 1229a(c)(6)(C); 8 C.F.R. § 1003.2(b)(1).[4]

Given the foregoing, the BIA correctly concluded that Mangroo's motion was a motion for reconsideration. Mangroo's

---

[4] On appeal, Mangroo does not dispute that his motion for reconsideration, if properly construed, was untimely and thus has forfeited this issue. *See Sapuppo,* 739 F.3d at 681.

motion raised three errors that he alleged the IJ made in considering facts known to the parties at the time of the removal hearing—specifically (1) the IJ's ordering Mangroo to file a Form I-601, (2) the IJ's applying the incorrect legal standard to his waiver request, and (3) the IJ's "not going forward with [Mangroo's] application to readjust status." In other words, Mangroo's motion sought reconsideration of the same facts due to these alleged errors and not reopening of proceedings for the agency to consider new facts. These kinds of arguments are made in a motion for reconsideration, not a motion to reopen. *See* 8 U.S.C. § 1229a(c)(6)(C); 8 C.F.R. § 1003.2(b)(1).

Mangroo contends his motion was "not merely seek[ing] reconsideration" because he submitted with it a new I-130 immediate relative petition filed by his daughter Melissa along with a corresponding I-485 application for adjustment of status. But, as the government points out, this new I-130 petition was "based on equities [Mangroo] already possessed at the time of his individual hearing," namely his relationship to his daughter Melissa, who has been a U.S. citizen since 2014.

Notably, at the December 2015 master calendar hearing, the IJ specifically urged Mangroo to pursue these forms of relief (I-130 petition and I-485 adjustment application), evidencing that these applications could have been filed well *before* the final removal hearing in May 2019. Mangroo's motion for reconsideration tacitly acknowledged this fact by arguing that Mangroo was *already eligible* for this relief at the time of the removal hearing and that the IJ erred

by not considering that form of relief *at that time*. The BIA did not err in concluding Mangroo's I-130 petition and corresponding I-485 application did not constitute new evidence that was previously unavailable at the time of his removal hearing. *See* 8 U.S.C. § 1229a(c)(7)(A), (B); 8 C.F.R. § 1003.2(c)(1).

## IV. CONCLUSION

In sum, we lack jurisdiction to review the agency's determination that a § 237(a)(1)(H) fraud waiver was not warranted as a matter of discretion, and Mangroo failed to administratively exhaust his claim that the IJ applied the wrong legal standard in denying his waiver request. Accordingly, we dismiss his petition for review of the BIA's March 31, 2022 decision.

Further, the BIA did not err in construing Mangroo's motion to reopen as a motion for reconsideration because it did not present new evidence but rather sought to correct perceived errors by the IJ. We lack jurisdiction to review the BIA's denial of *sua sponte* reconsideration. Accordingly, we deny in part and dismiss in part Mangroo's petition for review of the BIA's October 20, 2023, order.

**PETITIONS DISMISSED IN PART, DENIED IN PART.**